11 A.3d 786

MARYLAND STATE BOARD OF PHYSICIANS

v.

Harold I. EIST.

No. 110, Sept. Term, 2007.

Court of Appeals of Maryland.

Jan. 21, 2011.

Reconsideration Denied Feb. 17, 2011.

Steven M. Sullivan, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for petitioner.

Alfred F. Belcuore (Montedonico, Belcuore & Tazzara, P.A., Washington, D.C.), on brief, for respondent.

Timothy C. Miller, J.D., Senior Director for Governmental Relations and Policy, Federation of State Medical Boards, Dallas, TX, for Amicus Curiae brief of the Federation of State Medical Boards.

James C. Pyles, Esq., Powers Pyles Sutter & Verville, P.C., Washington, D.C., for Amici Curiae brief of the American Academy of Psychiatry and the Law, American Academy of Psychoanalysis and Dynamic Psychiatry, American Association for Social Psychiatry, American Association of Practicing Psychiatrists, American Association of Psychiatric Administrators, American Psychiatric Association, American Psychoanalytic Association, Baltimore Washington Society for Psychoanalysis, California Psychoanalytic Confederation (CAPsaC), Child and Adolescent Psychiatric Society of Greater Washington, Confederation of Independent Psychoanalytic Societies, Cyber Privacy Project, Delmarva Psychiatry Group, Empire State Lyme Disease Association, Florida Psychiatric Society, International Lyme and Associated Diseases Society, JustHealth, Lime Induced Autism Foundation, Lyme Disease Education and Support Groups of Maryland, Maryland Psychiatric Society, Med Chi, Mississippi Psychiatric Association, National Alliance on Mental Illness—Delaware, National Association of Social Workers, National Association of Social Workers, Maryland Chapter, National Coalition of Mental Health Professionals and Consumers, New Jersey Psychiatric Association, Oklahoma Psychiatric Physicians Association, Ontario District Branch of APA, Patient Privacy Rights, Program in Psychiatry and the Law, Beth Israel Deaconess Medical Center, Harvard, Psychiatric Society of Virginia, Psychoanalytic Soci-

ety of New England, East, Psychiatric Society of Virginia, Psychoanalytic Society of New England, East, Psychiatric Society of Delaware, Psychiatric Society of Westchester County (The Westchester District Branch, APA), Suburban Maryland Psychiatric Association, Talbot County Medical Society, Vermont Psychiatric Association, Washington Psychiatric Society, West Hudson Psychiatric Society, Texas Society of Psychiatric Physicians, Massachusetts Psychiatric Society.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, and JOHN C. ELDRIDGE (Retired, Specially Assigned), IRMA S. RAKER (Retired, Specially Assigned), DALE R. CATHELL, (Retired, Specially Assigned), JJ.

JOHN C. ELDRIDGE (Retired, Specially Assigned), J.

This is an action under the judicial review section of the Maryland Administrative Procedure Act[1] to review a reprimand and fine, imposed on a licensed physician by the Maryland State Board of Physicians, based upon the Board's conclusion that the physician had failed to cooperate with a lawful investigation conducted by the Board.[2] The basis for the Board's conclusion was the failure by the physician, respondent Dr. Harold I. Eist, to obey, timely, a subpoena for the production of certain patients' medical records in his possession. The Circuit Court for Montgomery County reversed the Board's decision, and the Court of Special Appeals affirmed the judgment of the Circuit Court. The intermediate appellate court held that the Board was not entitled to the records and that, therefore, Dr. Eist did not fail to cooperate with a lawful investigation.

---

1. Maryland Code (1984, 2009 Repl.Vol.), § 10–222 of the State Government Article.

2. At the time the initial complaint was received, the Maryland State Board of Physicians was named the Board of Physicians Quality Assurance. Pursuant to Ch. 252 of the Acts of 2003, effective July 1, 2003, during the pendency of this case, the name of the agency was changed to the Maryland State Board of Physicians. The agency will usually be referred to as "the Board" in this opinion.

We shall hold that, because neither Dr. Eist nor the patients took any appropriate action to challenge the subpoena, such as filing in the Circuit Court a motion to quash or a motion for a protective order, as required by the applicable statutes, and because Dr. Eist clearly failed to comply with the subpoena in a timely manner, the Board's decision was legally correct. Consequently, we shall reverse the judgments of both courts below and direct that the Board's decision be affirmed.

I.

In a letter dated February 19, 2001, the petitioner, the Maryland State Board of Physicians, received a complaint from the estranged husband of a patient of Dr. Harold I. Eist. Dr. Eist, a psychiatrist licensed to practice medicine in Maryland, had practiced for thirty-seven years at the time the complaint was filed. The complaint alleged that Dr. Eist had "over-medicated my wife and my sons" and detailed an incident in which Dr. Eist had "started calling [the complainant] a liar and yelling at [the complainant]." The letter further alleged that Dr. Eist had "lost any ability to practice medicine in a truly objective and professional manner."

On March 15, 2001, Harold Rose, a "Compliance Analyst" for the Board, wrote to Dr. Eist, notifying him that a complaint had been filed against him and attaching a copy of the complaint. The Board requested a written response within 21 days, and asked Dr. Eist to indicate whether his response could be released to the complainant. Along with the letter, the Board issued a subpoena duces tecum which stated:

"Pursuant to Sections 14–206(a) and 14–401(g) of the Health Occupation[s] Article of the Annotated Code of Maryland, YOU ARE HEREBY SUMMONED and COMMANDED by the BOARD OF PHYSICIAN QUALITY ASSURANCE OF MARYLAND to deliver IMMEDIATELY UPON SERVICE OF PROCESS a copy of all medical records of patients [names the wife and two sons of the complainant] treated at your facility; which materials are in your custody, possession or control.

"And by virtue of the authority of the said BOARD OF PHYSICIAN QUALITY ASSURANCE, such information is thereby made returnable **within 10(ten) days** . . . .

"**FOR FAILURE TO OBEY** this summons on petition of the Board a court of competent jurisdiction may punish the person as for contempt of court, pursuant to the provisions of the Health Occupations Article of the Annotated Code of Maryland Section 14–206(b)."

The letter to Dr. Eist from the Board and the subpoena were dated March 15, 2001, but they were delivered to the wrong address. The same letter and subpoena were dispatched again by the Board on April 18, 2001, and were received by Dr. Eist on April 19, 2001. The Board agreed that the subpoenaed records were due ten days from April 19, 2001, the date when Dr. Eist actually received the subpoena.

Dr. Eist responded to the Board on April 20, 2001. His letter informed the Board that the complainant was not one of his patients, and that Dr. Eist had treated only the complainant's "estranged wife and, at times, three of their children." Dr. Eist reasoned that the complaint might have been motivated by the complainant's "bitterly contested" divorce litigation with Dr. Eist's patient, in which Dr. Eist had been called as a witness "concerning the children of the marriage." Dr. Eist stated to the Board as follows:

"I am not certain what I will be asked to respond to in the course of your investigation, nor what information received in confidence from [my patients] might come into the record. It is my belief that they are required to be notified of this matter and any request for information which you might make of me concerning their treatment and their confidential communications to me. I will be pleased to cooperate fully with any investigator with the consent of the patients (including any guardian necessary to waive the children's privilege), or, if the patients object and take steps to protect their communications with any appropriate decision overruling their objections and requiring that I furnish the information. At this point, they have not filed a com-

plaint nor in any other way consented to release of information to BPQA so far as I know."

On May 1, 2001, Dr. Eist forwarded a copy of the subpoena to his patient, the wife of the complainant, and requested that she inform him "as soon as you can, whether you, or your attorney, are taking any action to oppose my compliance with this subpoena." Dr. Eist concluded his letter by stating that, if he had not heard from her "within one week, I will forward the records to the Board." Dr. Eist sent a copy of this letter to Mr. Rose of the Board.

On May 4, 2001, Dr. Eist received a copy of a report filed by the children's court-appointed attorney. The report, filed with the Circuit Court for Montgomery County, stated that the court-appointed attorney refused to waive the "privilege" that existed between the children of the complainant and Dr. Eist, or "any mental health professional." [3] Dr. Eist sent this report to the Board, along with a letter in which he set forth a transcription of a telephone message which he had received from his patient, the wife of the complainant. In her message, his patient stated: "I refuse to allow you to release my medical record to the medical board." Additionally, his patient's attorney sent a letter, dated May 14, 2001, to Mr. Rose of the Board, noting that the patient "does not waive her privilege with Dr. Eist and has asked that he not release her records in response to the request." The letter went on to state that the patient wanted the Board to know that "she has absolutely no complaints about Dr. Eist" and that "he has always conducted himself in a professional manner."

The Board responded to Dr. Eist in a letter dated June 27, 2001, from Frank Bubczyk, another "Compliance Analyst" with the Board. The letter informed Dr. Eist that, based on the complaint received, the Board had opened an investigation.

---

**3.** The report failed to indicate precisely the privilege which the attorney refused to waive. Presumably, the attorney was referring to the statutory psychiatrist-patient privilege set forth in Maryland Code (1974, 2006 Repl.Vol., 2010 Supp.), § 9–109(b) of the Courts and Judicial Proceedings Article.

The letter also included another request for the medical records covered by the subpoena. Moreover, the letter informed Dr. Eist that, "[f]or your information, receipt of those medical records is not contingent on the consent of the patient/s." The letter cautioned Dr. Eist that failure to produce the requested records "may be grounds for disciplinary action pursuant to Md.Code Ann. Health Occ. § 14–404(a)(33) for fail[ure] to cooperate with a lawful investigation conducted by the Board."

On July 11, 2001, Dr. Eist's attorney sent to the Board a letter stating that

"Dr. Eist is under the impression that he does not have his patients' permission to reveal their confidences, and that no court has weighed the necessity for violating their confidences based upon the unsupported allegations of someone with a clear conflict of interest, and a desire to violate those confidences."

The letter reiterated that "Dr. Eist does not dispute the authority of the [Board] to examine these matters," and if a court agreed that the records could be examined, "Dr. Eist certainly will comply." The letter also discussed the patients' privacy interests.

In a subsequent letter to the Board dated July 16, 2001, Dr. Eist detailed his relationship with the complainant, informed the Board that the complainant "has never been my patient," and stated that the complainant "is either confused or outright dishonest in his assertions." Dr. Eist also submitted to the Board supplemental documents concerning his relationship with the complainant and a letter from the complainant's wife praising the care that she and her children had received from Dr. Eist.

During the entire process, neither Dr. Eist nor his patients instituted any judicial proceedings to quash the subpoena issued by the Board or to obtain a protective order.

On December 19, 2001, the Board voted to charge Dr. Eist with a violation under Maryland Code (1981, 2009 Repl.Vol.),

§ 14–404(a)(33) of the Health Occupations Article. That provision authorizes the Board to

"reprimand any licensee, place any licensee on probation, or suspend or revoke a license if the licensee: * * * (33) Fails to cooperate with a lawful investigation conducted by the Board . . . ." [4]

The charge was officially issued by the Board on February 4, 2002. The February 4, 2002, document stated that a "resolution conference" had been scheduled for April 3, 2002, at the Board's Office, and a "prehearing conference in this matter" had been scheduled for June 6, 2002, in the Office of Administrative Hearings.

After the Board had formally instituted charges against Dr. Eist, he again wrote to his patient's attorney informing the attorney that

"to try and bring this matter to a close, we are hereby giving you and your client notice that unless we hear from you within one week that (1) as a result of your efforts, the Board has ceased to ask for these documents; (2) you have obtained a court order enjoining Dr. Eist from sending the documents to the [Board]; or (3) an action has been filed seeking such an injunction, but notwithstanding good faith efforts, it has not been completed, Dr. Eist intends to make your client's entire file available to the [Board]."

A similar message was given to the representative of the children. None of the parties responded to these requests.

Dr. Eist turned over the patients' records to the Board on March 20, 2002. Dr. Eist's attorney wrote to both the Assistant Attorney General for the Department of Health and Mental Hygiene and the "Compliance Analyst" for the Board, stating that, in turning over the records, "we do not concede

---

**4.** While the Health Occupations Article, as well as the Health–General Article, of the Code have undergone some changes between the year 2001 and the present, none of the provisions applicable to this case and cited in this opinion have been changed in substance. Consequently, we shall in this opinion cite the current provisions of both Articles.

that Dr. Eist in any way refused in the past to cooperate with an 'investigation.' "

On October 31, 2002, the Board forwarded the files, including the original complaint and the patient records produced by Dr. Eist, to the Maryland Psychiatric Society's Peer Review Committee. Dr. Eist appeared before the Peer Review Committee on August 26, 2003. The report of the Maryland Psychiatric Society Peer Review Committee, dated November 30, 2003, ultimately determined that Dr. Eist had "prescribed medications appropriately" and that there was "no evidence that he over prescribed any medication or induced psychotic symptoms." The Committee also found that Dr. Eist "behaved in a professional manner" when interacting with the complainant and that there had been "no breach in any applicable standard of care in his treatment or conduct with the patients."

On December 1, 2003, the Board received the report of the Peer Review Committee, and, on February 5, 2004, the Board decided not to charge Dr. Eist based on the complaint of the patient's estranged husband. The husband's complaint was dismissed. Nevertheless, the Board pointed out that the matter "of failing to cooperate with a lawful investigation conducted by the Board ... remains open."

While the above-reviewed events were taking place, the Board's charge, that Dr. Eist failed to cooperate with a lawful investigation by the Board, was being processed by the Maryland Office of Administrative Hearings. Numerous motions, memoranda and exhibits were filed with that Office, by both sides, between February 4, 2002, and July 15, 2002. A hearing took place before an Administrative Law Judge (ALJ) of the Office of Administrative Hearings on July 15, 2002.

Both sides agreed that there were no disputes as to the material facts, and both sides filed motions for summary decision pursuant to COMAR 28.02.01.12D.[5] On August 14,

---

5. COMAR 28.02.01.12D provides as follows:
 "D. Motion for Summary Decision.

2002, the ALJ issued a recommended decision in favor of Dr. Eist. The ALJ initially held that

> "the Board's right to obtain the mental health records of patients or confidential information regarding the treatment of a mental health patient is not absolute where the patient objects to the disclosure of that information. Any request for a subpoena for mental health records where an objection has been raised by the holder of that privilege should be subject to the scrutiny of an independent factfinder."

The ALJ indicated that the "independent factfinder" with regard to the patient's assertion of privilege should be a judge, that the Board had the obligation of seeking judicial enforcement of the subpoena, and that "the Board's failure to seek enforcement of the subpoena does not place the onus of seeking judicial intervention on the Respondent [Dr. Eist]." The ALJ concluded "that the Respondent followed the only ethical course of action available to him under the circumstances" and that the "Respondent did not fail to cooperate; rather he attempted to cooperate while preserving the integrity of the confidential relationship with his patients." The ALJ granted the Respondent's Motion for Summary Decision, denied the Board's Motion for Summary Decision, and recommended that the charges be dismissed.

---

"(1) Any party may file a motion for summary decision on all or part of an action, at any time, on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law. Motions for summary decision shall be supported by affidavits.

"(2) The response to a motion for summary decision shall identify the material facts that are disputed.

"(3) An affidavit supporting or opposing a motion for summary decision shall be made upon personal knowledge, shall set forth the facts that would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit.

"(4) The judge may issue a proposed or final decision in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law."

The "Administrative Prosecutor" filed with the Board exceptions to the ALJ's recommended decision. After a hearing before the Board, the Board on January 28, 2003, rejected the ALJ's recommended decision and found that Dr. Eist had failed to cooperate with a lawful investigation. In a fourteen page opinion, the Board reviewed the undisputed facts as well as the applicable law. The Board pointed out that the plain wording of the applicable statute requires a health care provider, in accordance with a subpoena, to disclose to the Board a particular patient's medical records, regardless of the patient's consent, for purpose of an investigation into the alleged improper practice of a health professional. *See* Maryland Code (2000, 2009 Repl.Vol.), §§ 4–306 and 4–307(k)(1)(v)(1) of the Health–General Article. The Board recognized the role of a court, in ruling upon a motion to quash or a motion for a protective order, to weigh a patient's constitutional privacy interests in the records against the Board's need for the records. The Board, however, disagreed with the ALJ's view that "the Board must petition a court in each and every instance" a subpoena is issued. According to the Board, the "party who wishes to present a constitutional claim has the burden of presenting it to a court."[6] The Board issued a final order reprimanding Dr. Eist and imposing a $5,000 fine.

Dr. Eist filed in the Circuit Court for Montgomery County an action for judicial review of the Board's decision reprimanding him and imposing a $5,000 fine.[7] After hearing

---

6. The opinion pointed out that the Board's Annual Report for the year 2000 lists the number of investigations at 1,252 for that year.

7. As earlier noted, Dr. Eist's action for judicial review was pursuant to the judicial review section of the Maryland Administrative Procedure Act, Maryland Code (1984, 2009 Rep. Vol.), § 10–222 of the State Government Article. That section provides in relevant part as follows:

"**§ 10–222 Judicial review.**

"(a) *Review of final decision.*—(1) Except as provided in subsection (b) of this section, a party who is aggrieved by the final decision in a contested case is entitled to judicial review of the decision as provided in this section.

(2) An agency, including an agency that has delegated a contested case to the Office, is entitled to judicial review of a decision as

arguments from the parties, the Circuit Court issued an oral ruling in which the court determined that, although the Board was entitled to sanction Dr. Eist, the Board had made an error of law. The Circuit Court stated that it agreed with the Board that, "[w]hen dealing with a party, [the statute] does not require the Board to seek intervention of the court before the subpoena can be enforced" and that "the party fails to respond to the subpoena at its own risk if they fail to file a motion to quash and/or a motion for a protective order."

The Circuit Court went on to point out that "a patient's right to privacy" may be "outweighed by a board's need for information when conducting a lawful investigation under its statutory authority." The court continued:

"The doctor has the right under the statute . . . to file a motion to quash or a motion for a protective order, as does the party. Further, the doctor . . . would have the right to do neither, but then the doctor accepts the risk that if it is later determined that the subpoena was lawful . . . of perhaps being sanctioned for his failure to turn over those records."

Turning to the applicable statute,[8] the Circuit Court acknowledged that

provided in this section if the agency was a party before the agency or the Office.

\* \* \*

"(h) *Decision.*—In a proceeding under this section, the court may:
(1) remand the case for further proceedings;
(2) affirm the final decision; or
(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:
(i) is unconstitutional;
(ii) exceeds the statutory authority or jurisdiction of the final decision maker;
(iii) results from an unlawful procedure;
(iv) is affected by any other error of law;
(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or
(vi) is arbitrary or capricious."

**8.** Maryland Code (2000, 2009 Repl.Vol.), § 4–307(k)(6) of the Health–General Article.

"the statute imposes the burden of asserting that [privacy] right on the doctor or the patient. The statute does not require the Board, even when faced with an objection, to go to the court and seek intervention of the court to enforce the subpoena. Rather, the statute requires that the party who seeks to assert the right of privacy apply to the court and seek the intervention of the court. And that the statute is not constitutionally infirm by virtue of placing that obligation on the party asserting the right, and because the statute nevertheless ensures to the party with the privacy interest an ability to seek the intervention of the court to protect that right, that the statute is not constitutionally infirm."

Nevertheless, the Circuit Court found that an "error of law" was committed in the administrative proceedings. The court found that, because the ALJ had decided the case on cross motions for summary decisions, the record had not been sufficiently developed to decide whether there would be a violation of the statute

"if a doctor fails to cooperate because of ... a good faith and reasonable belief that [he] had the right to withhold the documents, particularly upon the advice of counsel, as it appears that the doctor acted in this case." [9]

The court remanded the case to the Board for the Board to decide whether Dr. Eist acted "reasonably and in good faith." The Circuit Court also stated:

"If, upon an analysis by the administrative law judge, they found in this particular instance that * * * the Board's interest did not outweigh the privacy interests of the individual patients * * * [then,] in this instance, those subpoenas were not lawful. . . . In which case, then [Dr. Eist]

---

9. In this connection, *see Giant of Md. v. State's Attorney*, 274 Md. 158, 179, 334 A.2d 107, 119 (1975) (" '[T]he fact that failure to comply with the [order] ... was based on the advice of counsel is generally held to be no justification,' " quoting *Weaver v. State*, 244 Md. 640, 644, 224 A.2d 684, 687 (1966)).

would not have been in violation of [the statute] because he didn't fail to respond to a lawful subpoena."

On remand, the Board again referred the case to an ALJ for an evidentiary hearing on the issues set forth in the Circuit Court's remand order. After hearing from several witnesses and developing an extensive record, the ALJ again decided the matter in Dr. Eist's favor. The ALJ determined that the subpoena was not lawfully issued because the Board had failed to correctly weigh the patients' privacy rights against the Board's interest in obtaining their records. The ALJ also found that Dr. Eist had acted in good faith because he relied upon the advice of counsel. Based on these determinations, the ALJ concluded that Dr. Eist had not violated § 14–404(a)(33) of the Health Occupations Article. The ALJ's Proposed Decision recommended that the charges against Dr. Eist be dismissed. The Administrative Prosecutor again filed exceptions to the Proposed Decision of the ALJ. After a hearing, the Board declined to adopt the Proposed Decision and instead issued a Final Decision sanctioning Dr. Eist with a reprimand and a fine of $5,000.

The present action for judicial review was then filed in the Circuit Court. The court, in a brief order, reversed the Board's decision and ordered the Board to dismiss the charges against Dr. Eist. The Board appealed to the Court of Special Appeals, and that court, in an extensive opinion, affirmed the judgment of the trial court. *Board of Physicians v. Eist,* 176 Md.App. 82, 932 A.2d 783 (2007). The Court of Special Appeals, like the ALJ but contrary to the first circuit court decision, held that "the burden [was] on the Board to obtain a ruling from a court on the [patients'] privacy issue" with respect to the subpoenaed records. *Board of Physicians v. Eist, supra,* 176 Md.App. at 135, 932 A.2d at 814. The intermediate appellate court further held that, until the Board does obtain a judicial ruling (176 Md.App. at 134, 932 A.2d at 814),

"so long as a doctor is acting in good faith in withholding the subpoenaed records until the patient withdraws his privacy right objection or a governmental interest/privacy

interest weighing assessment is made by a court, the physician is not failing to cooperate with a lawful investigation of the Board."

At other places in its opinion, however, the Court of Special Appeals seemed to view the "governmental interest/privacy interest" issue as one which could properly be resolved in this judicial review action, and the intermediate appellate court held (176 Md.App. at 120, 932 A.2d at 805–806):

"[T]he agency record leads us to conclude that, when the Subpoena was issued, and until the patients' withdrew their privacy right assertion, the Board's governmental interest in obtaining Dr. Eist's psychiatric records of [the] Patients ... was not a compelling interest that outweighed the patients' privacy interests in those records."

In the final paragraph of its opinion, the Court of Special Appeals concluded as follows (176 Md.App. at 135, 932 A.2d at 814–815):

"On the facts found by the Board, as supported by substantial evidence in the agency record, the Board's interest in obtaining the patients' psychiatric records to investigate the standard of care allegation leveled by Mr. S against Dr. Eist did not outweigh the patients' privacy interests in those highly personal records. Had either the Board, Dr. Eist, or the patients sought court intervention in the period of time soon after the Subpoena was issued, the proper ruling by the court would have been that the Board was not entitled to the records in question because disclosing them would violate the patients' constitutional rights. Accordingly, Dr. Eist did not, as a matter of law, fail to cooperate with a lawful investigation of the Board by not furnishing the patients' psychiatric records to the Board, in response to the Subpoena, until the patients withdrew their privacy objection."

The Board filed in this Court a petition for a writ of certiorari which was granted. *Board of Physicians v. Eist,* 402 Md. 355, 936 A.2d 852 (2007). Dr. Eist did not file a cross-petition for a writ of certiorari. The Board's petition

presented the following two questions (citations to the Maryland Code omitted):

"1. Where, as part of its investigation of a complaint alleging that a physician's psychiatric treatment was endangering patients, a professional licensing and disciplinary board issued a subpoena to the physician for patients' mental health treatment records and neither the physician nor the patients moved to quash the subpoena or to obtain a protective order on constitutional or other grounds, did the physician's refusal to disclose the subpoenaed records constitute a failure to cooperate with a lawful investigation conducted by the Board under the terms of the Medical Practice Act...."

"2. Did the Court of Special Appeals commit reversible error by reversing an administrative agency decision supported by substantial evidence, failing to defer to the agency's authority as fact finder to draw inferences from the evidence, substituting its judgment for the agency's expertise, and imposing upon the agency novel legal burdens as obstacles to the exercise of its statutory authority to investigate and discipline physicians?"

We shall answer the first question in the affirmative. Therefore, we need not, and shall not, reach the second question.

## II.

A major premise underlying the recommended decisions of the ALJ and the decision of the Court of Special Appeals is that the Board bears the burden of instituting a judicial proceeding to enforce the subpoena. At such proceeding, a court would weigh the patients' privacy interests in the subpoenaed records against the Board's need for those records. The Court of Special Appeals held that, in the absence of a judicial proceeding to enforce the subpoena, Dr. Eist, acting in good faith, could not be guilty of failing to cooperate with the Board's investigation. The intermediate appellate court also seemed to hold that the issue of weighing the Board's need for the records against the patients' privacy rights could properly be reached in the present administrative/judicial review action,

and that, on this record, the patients' privacy rights outweighed the Board's need. Consequently, according to the Court of Special Appeals, Dr. Eist did not fail to cooperate by refusing to turn over the records.

■ The premise, that the Board had the burden of instituting a judicial action to enforce the subpoena, is inconsistent with the applicable statutes and is not supported by the Maryland cases relied on by the ALJ and the Court of Special Appeals. Moreover, the issue of weighing the patients' privacy rights against the Board's need for the records should have been resolved in an action by the patients or Dr. Eist to quash the subpoena or for a protective order. It was not an appropriate issue in the present administrative/judicial review action. In this action, the undisputed evidence showing Dr. Eist's deliberate refusal to comply with the subpoena in a timely manner clearly supported the Board's decision.

Turning first to the applicable statutes, §§ 14–401 *et seq.* of the Health Occupations Article of the Code comprehensively authorize the Board to take disciplinary action against health care providers, to investigate allegations of conduct warranting disciplinary action, to hold hearings, etc. Section 14–401(i) provides that the "Board may issue subpoenas ... in connection with any investigation...." Section 14–206(a) of the Health Occupations Article reiterates that "the Board may issue subpoenas ... in connection with any investigation under this title...." As earlier noted, *supra* n. 4, § 14–404(a)(33) of the Health Occupations Article authorizes the Board to "reprimand any licensee, place any licensee on probation, or suspend or revoke a license if the licensee: * * * (33) Fails to cooperate with a lawful investigation conducted by the Board." Section 14–405.1 of the Health Occupations Article provides that, if the Board finds grounds to suspend or revoke a physician's license, or to reprimand a physician, the Board may also impose a fine upon the physician.[10]

---

10. Section 14–405.1 states as follows:

The pertinent statutory provisions governing the confidentiality and disclosure by health care providers of medical records, including mental health medical records, are set forth in Maryland Code (2000, 2009 Repl.Vol.), Title 4, Subtitle 3, §§ 4–301 through 4–309 of the Health–General Article. The basic section dealing with investigations and the disclosures of medical records "without [the] authorization of [the] person in interest" is § 4–306. That section provides in relevant part as follows (emphasis added):

"(b) ... A health care provider *shall disclose* a medical record *without the authorization of a person in interest.*"

\* \* \*

"(2) Subject to the additional limitations for a medical record developed primarily in connection with the provision of mental health services in § 4–307 of this subtitle, *to health professional licensing and disciplinary boards, in accordance with a subpoena for medical records* for the sole purpose of an *investigation* regarding:

(i) Licensure, certification, or discipline of a health professional; or

(ii) *The improper practice of a health profession.... "*

\* \* \*

Section 4–307, concerning mental health medical records, reiterates that, in connection with a Board investigation, records must be provided to the Board regardless of a patient's authorization, and that the appropriate procedure for weighing a patient's privacy interests against the Board's need for the

---

"**Penalty instead of suspension or in addition to suspension or revocation.**

(a) *Imposition of penalty.*—If after a hearing under § 14–405 of this subtitle the Board finds that there are grounds under § 14–404 of this subtitle to suspend or revoke a license to practice medicine or osteopathy, or to reprimand a licensed physician or osteopath, the Board may impose a fine subject to the Board's regulations:

(1) Instead of suspending the license; or

(2) In addition to suspending or revoking the license or reprimanding the licensee.

(b) *Disposition of funds.*—The Board shall pay any fines collected under this section into the General Fund."

records is for the patient or the health care provider to file a court action to quash the subpoena or for a protective order. Section 4–307(k)(1)(v)(1) states:

"(1) A health care provider shall disclose a medical record without the authorization of a person in interest:

\* \* \*

"(v) In accordance with a subpoena for medical records on specific recipients:

1. To health professional licensing and disciplinary boards for the sole purpose of an investigation regarding licensure, certification, or discipline of a health professional or the improper practice of a health profession...."

With respect to a health care provider's or patient's remedy, § 4–307(k)(6) states (emphasis added):

"(6) This subsection may not preclude a health care provider, a recipient, or person in interest from asserting *in a motion to quash or a motion for a protective order* any constitutional right or other legal authority in opposition to disclosure."

Thus the statute grants standing to the health care provider, as well as others opposed to disclosure, to raise the patient's constitutional rights or other grounds for nondisclosure, by filing in court a motion to quash or a motion for a protective order.

■ Consequently, the above-reviewed statutory provisions make it clear that, when the Board is investigating a complaint against a health care provider and subpoenas certain medical records in his or her possession, the health care provider is required to provide the medical records to the Board regardless of the patient's authorization. Contrary to a criticism expressed by the ALJ and the Court of Special Appeals, however, neither the statutes nor the Board treat the health care provider's obligation to provide the records as an "absolute" one. If the patient and/or the health care provider believe that there are grounds for not producing the records, the patient or the health care provider must file a motion to quash the subpoena or a motion for a protective order pursu-

ant to Maryland Rules 2–403 or 2–510. This is the route chosen by the General Assembly for the resolution of constitutional or other objections to the subpoena. The General Assembly did not provide for an action by the Board to enforce the subpoena.[11] Furthermore, the General Assembly did not provide that the health care provider could refuse to comply with the subpoena, fail to file a motion to quash or a motion for a protective order, and later, in a disciplinary action, defend on the ground that the patient's privacy rights were infringed by the subpoena.[12]

The Court of Special Appeals and the ALJ, in weighing the patients' privacy rights against the Board's need for the medical records in Dr. Eist's possession, extensively relied upon this Court's opinion in *Doe v. Maryland Board of Social*

---

11. When the General Assembly intends that a state agency issuing the subpoena should bring a court action to enforce the subpoena when there is a failure to comply, the General Assembly knows how to provide for such a procedure. *See* Maryland Code (1984, 2009 Repl. Vol.), § 20–1010(c) of the State Government Article, relating to the enforcement of subpoenas issued by the Maryland Commission on Human Relations; Maryland Code (1975, 2007 Repl.Vol.), § 11–701(c) of the Corporations and Associations Article, providing, *inter alia,* that when there is a "refusal to obey a subpoena," the Securities Commissioner may apply to a court for enforcement of the subpoena.

 Whether the Board, in its discretion, could bring a judicial action to enforce the subpoena is an issue which was not raised before us. Because the issue was not raised, we shall not explore it further. We hold only that, in light of the statutory provisions, the Board is not required to bring a judicial action to enforce the subpoena.

12. It is noteworthy that the General Assembly provided for alternative proceedings to discipline a health care provider who failed to comply with a subpoena issued by the Board. In addition to the present administrative/judicial review proceeding under § 14–404(a)(33) of the Health Occupations Article, § 14–206(b) of the Health Occupations Article provides, *inter alia,* that if "a person disobeys a subpoena from the Board," a court "may punish the person as for contempt of court." *See also* § 4–309 of the Health–General Article, relating to a health care provider's refusal to disclose records.

*Work Examiners,* 384 Md. 161, 862 A.2d 996 (2004), and upon the Court of Special Appeals' earlier opinion in *Dr. K. v. State Board of Physician Quality Assurance,* 98 Md.App. 103, 632 A.2d 453 (1993), *cert. denied,* 334 Md. 18, 637 A.2d 1191, *cert. denied,* 513 U.S. 817, 115 S.Ct. 75, 130 L.Ed.2d 29 (1994). The *Doe* case involved a subpoena for records of a social worker concerning two of the social worker's clients. *Dr. K.,* like the present case, involved a subpoena for a psychiatrist's medical records relating to one of the psychiatrist's patients. In both of these cases, the appellate courts, *inter alia,* weighed the agencies' need for the subpoenaed records against the clients' and patient's privacy rights in the records. The Court of Appeals in *Doe* and the Court of Special Appeals in *Dr. K.* held that the agencies' need for the records outweighed the privacy interests of the clients in *Doe* and the patient in *Dr. K.* What is significant for purposes of the present case, and what was overlooked by the ALJ and the Court of Special Appeals in the present case, is that both *Doe* and *Dr. K.* were judicial actions to quash the subpoenas issued by the administrative agencies during the agencies' investigations. In both cases, the trial courts denied motions to quash the subpoenas, and these decisions were affirmed on appeal. *Doe* and *Dr. K.* were not, like the present case, actions for judicial review of final adjudicatory decisions by the administrative agencies.[13]

 Other cases in this Court illustrate that a motion to quash, or a motion for a protective order, or a motion for enforcement of the subpoena if provided for by statute, are the appropriate routes for raising challenges to administrative subpoenas. *See, e.g., Unnamed Attorney v. Attorney Griev-*

---

**13.** In fact, this point was emphasized in *Dr. K.,* 98 Md.App. at 121, 632 A.2d at 462, as follows:

"We emphasize that as yet no charges have been filed and no disciplinary action has been taken against Dr. K. At this stage, it is just as likely as not that the Board will agree with Dr. K.'s defense to the complaints filed against him and take no disciplinary action. Further, there are statutory provisions protecting patient A's records from being used for any purpose other than this investigation of Dr. K. Patient A may be entitled to sue for civil damages for any unauthorized disclosure of her medical records."

*ance Commission,* 409 Md. 509, 976 A.2d 267 (2009); *Lubin v. Agora,* 389 Md. 1, 882 A.2d 833 (2005); *State Commission v. Freedom Express,* 375 Md. 2, 825 A.2d 354 (2003); *Dep't of Social Services v. Stein,* 328 Md. 1, 612 A.2d 880 (1992); *Unnamed Atty. v. Attorney Griev. Comm'n,* 303 Md. 473, 494 A.2d 940 (1985); *Fred W. Allnutt, Inc. v. Comm'r, Lab. & Ind.,* 289 Md. 35, 421 A.2d 1360 (1980); *Banach v. State Comm'n On Human Relations,* 277 Md. 502, 356 A.2d 242 (1976). The parties have not called to our attention any opinion of this Court, involving challenges to an administrative subpoena, which would sanction the procedure required by, and the decisions of, the ALJ and the reviewing courts in the present case.[14]

---

**14.** Even if § 4–307 of the Health–General Article had not provided that Dr. Eist's remedy was to file in the Circuit Court a motion to quash the subpoena or a motion for a protective order, the result would be the same. It is a settled principle of Maryland law that, when a tribunal having jurisdiction issues to a person an order, that person may not refuse to obey the order on the theory that it is unlawful or unwarranted and, in a later collateral proceeding such as a contempt action or other disciplinary action like the present one, defend by attacking the earlier order. Instead, that person is required to challenge the order directly, in a proceeding available for such challenges, such as a motion to quash, an appeal, etc. *See, e.g., Attorney Griev. Comm. v. Garland,* 345 Md. 383, 398–399, 692 A.2d 465, 472–473 (1997); *Harford Co. Educ. Ass'n v. Board,* 281 Md. 574, 585–588, 380 A.2d 1041, 1048–1050 (1977); *Shapiro v. Ryan,* 233 Md. 82, 86–87, 195 A.2d 596, 598–599 (1963); *Sheets v. City of Hagerstown,* 204 Md. 113, 124–125, 102 A.2d 734, 738–739 (1954); *Donner v. Calvert Distillers Corp.,* 196 Md. 475, 488–489, 77 A.2d 305, 310 (1950). *See also United States v. United Mine Workers,* 330 U.S. 258, 293–294, 67 S.Ct. 677, 696, 91 L.Ed. 884, 912–913 (1947). There is no reason why the same principle should not be applicable to an administrative agency such as the Board, where the Legislature authorized the agency to issue a subpoena and authorized a court to punish a person, "as for contempt of court," who disobeyed the subpoena. *See* § 14–206(b) of the Health Occupations Article.

It should be pointed out that the above-discussed principle would not apply in cases involving subpoenas issued by federal grand juries or federal agencies. The reason for this is that denial of a motion to quash by a federal trial court is not appealable even though the denial of the motion terminates the proceeding in the trial court. *See United States v. Ryan,* 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); *Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); *Alexander v. United States,* 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906). If the recipient of a federal subpoena desires to continue

Under § 4–306 and 4–307 of the Health–General Article of the Maryland Code, Dr. Eist's exclusive judicial remedy was to file, in the Circuit Court for Montgomery County, a motion to quash the subpoena or a motion for a protective order. He was not entitled to refuse timely compliance with the subpoena, refrain from filing a motion to quash or a motion for a protective order, and later, in this collateral contested case administrative proceeding, challenge the subpoena.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO RE-VERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT WITH DIRECTIONS TO AFFIRM THE DECISION OF THE MARYLAND STATE BOARD OF PHYSICIANS. RESPONDENT TO PAY THE COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.*

BELL, C.J., RAKER and CATHELL, JJ., dissent.

RAKER, J., dissenting, joined by BELL, C.J. and CATHELL, J.

The Circuit Court for Montgomery County reversed the decision of the Maryland State Board of Physicians on April 5,

---

challenging it after the trial court denies a motion to quash, the recipient must disobey the subpoena and challenge it in a collateral proceeding such as a contempt action. This Court, however, has consistently refused to follow the non-appealability rule adopted by the Supreme Court in *Alexander, Cobbledick,* and *Ryan.* When a Maryland trial court denies a motion to quash or a motion for a protective order, and that action terminates the proceedings in the court, the trial court's denial is appealable even though administrative proceedings, or investigative proceedings, or separate court proceedings where the recipient of the subpoena was not a party, are ongoing. *See, e.g., Unnamed Attorney v. Attorney Grievance Commission,* 409 Md. 509, 513–514 n. 2, 976 A.2d 267, 270 n. 2 (2009); *St. Joseph Medical Center, Inc. v. Cardiac Surgery,* 392 Md. 75, 88–91, 896 A.2d 304, 312–313 (2006); *Dep't of Social Services v. Stein,* 328 Md. 1, 20–22, 612 A.2d 880, 885–886 (1992); *Unnamed Atty. v. Attorney Griev. Comm'n,* 303 Md. 473, 480–483, 494 A.2d 940, 943–945 (1985); *In Re: Special Investigation No. 244,* 296 Md. 80, 83–86, 459 A.2d 1111, 1114 (1983).

2006, and remanded the matter to the Board with instructions to dismiss the charge against Dr. Eist. Earlier, in August of 2005, the same court ruled, from the bench, that the Board had committed an error of law when it determined, *inter alia,* that a doctor who fails to produce records in response to a Board-issued subpoena necessarily violates Maryland Code (1981, 2009 Repl.Vol.) § 14–404(a)(33) of the Health Occupations Article, even if he acted in good faith and in reliance upon the advice of counsel. The court then remanded the matter to the Board for a full contested case hearing before the ALJ. I would affirm the Circuit Court for Montgomery County on the grounds that Dr. Eist, in relying upon the advice of his counsel, did not fail to cooperate with a lawful investigation conducted by the Board.[1]

Dr. Eist was represented on this issue by a highly respected and competent attorney, Armin U. Kuder. It is clear from the facts that Mr. Kuder was advising Dr. Eist throughout these proceedings. Under the circumstances presented herein, and whether a doctor must file a motion to quash a subpoena or simply may decline to provide the medical records, it seems to me that a physician should be able to rely upon and follow the advice of his attorney.

I gleaned the following facts related to this representation from the opinion of the Court of Special Appeals, which noted as follows:

"Dr. Eist then called Armin U. Kuder, Esquire, for advice. Mr. Kuder told him that [the Board] was wrong and that it was essential to obtain the patients' permission before disclosing their mental health records. . . .

Dr. Eist did not receive [the Board's second] letter until July 7, 2001. He contacted Mr. Kuder, who on July 11 responded to [the Board] in writing. Mr. Kuder gave

---

1. Because the Court of Special Appeals decided the case on other grounds, i.e., that the Board was not entitled to the records, the court did not consider whether Dr. Eist acted in good faith and/or upon the advice of counsel in refusing to furnish the records in response to the subpoena.

background information about the Domestic Case for context, and said that Dr. Eist was preparing, and shortly would send, a written response to Mr. S's unprofessional conduct allegation. Mr. Kuder went on to say that, to the extent the Board was considering the 'allegations' against Dr. Eist to include Mr. S's complaint about the propriety of the treatment being rendered to Patients A, B, and C (*i.e.*, the standard of care allegation), 'Dr. Eist is under the impression that he does not have his patients' permission to reveal their confidences, and that no court has weighed the necessity for violating their confidences based upon the unsupported allegations of someone with a clear conflict of interest, and a desire to violate those confidences.' "

*Board of Physicians v. Eist,* 176 Md.App. 82, 104–06, 932 A.2d 783, 796–97 (2007).

I would affirm the judgment of the Court of Special Appeals, albeit on different grounds than that court held. I would hold that Dr. Eist relied in good faith upon the advice of his counsel and that he did not fail to cooperate with an investigation of the Board.

I am authorized to state that Chief Judge ROBERT M. BELL and Judge DALE CATHELL join in the views expressed in this dissenting opinion.