*Saint Luke Institute, Inc. v. Andre Jones*, No. 62, September Term, 2019, Opinion by Booth, J.

**Discovery of Mental Health Records Under the Maryland Confidentiality of Medical Records Act, Health General ("HG") §§ 4-301 Through 309 ("Confidentiality Act")** – Where mental health records are requested by a private party litigant in a civil case in which the patient has not authorized disclosure, the Confidentiality Act, the Maryland discovery rules, and our case law establish the following process for disclosure. The party seeking discovery should file a motion seeking or compelling the disclosure and requesting a court order under HG § 4-307. The movant must establish a "need to inspect"—in other words, a reasonable possibility that review of the records would result in discovery of usable evidence. In considering whether the movant has a need for access to the records, the court should consider the nature of the underlying litigation, the relationship between the records and any claim or defense, and the likelihood that review of the records would result in the discovery of relevant information.

Once the movant makes a threshold proffer sufficient to enable the court to determine that there is a "need to inspect," the court should undertake an *in camera* review of the documents sought to be disclosed to ensure that the records sought are relevant, and to ensure that disclosure is limited to only those records that may be relevant. If the court determines that the records are relevant, it should enter an order under Maryland Rule 2-403(b) authorizing the disclosure with adequate provisions or restrictions to protect the patient's privacy interests as it determines are appropriate on a case-by-case basis. Such conditions or restrictions should include a provision prohibiting redisclosure and requiring the return of original records and the return or destruction of any copies made, at the conclusion of the litigation.

**Health Care Provider's Standing to Raise Patient's Objections to Disclosure** – Under the plain language of the Confidentiality Act, HG § 4-307(k)(6), where a litigant is seeking discovery of mental health records, the health care provider or custodian has standing to raise a patient's "constitutional right or other legal authority in opposition to disclosure."

Circuit Court for Prince George's County
Case No.: CAL18-40657
Argued: September 10, 2020

IN THE COURT OF APPEALS

OF MARYLAND

No. 62

September Term, 2019

SAINT LUKE INSTITUTE, INC.

v.

ANDRE JONES

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

Opinion by Booth, J.

Filed: November 20, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

In this case, we are asked to determine the legal standard to be applied under the Maryland Confidentiality of Medical Records Act, Maryland Code (2000, 2019 Repl. Vol.), Health General ("HG") §§ 4-301 through 309 ("Confidentiality Act"), when a private party in a civil case seeks discovery of a patient's mental health records where the patient has not authorized the disclosure. We are also asked to determine whether the custodian of the records has standing to raise the patient's privacy rights or other legal opposition to disclosure on the patient's behalf. These questions arise in the context of a civil case filed in Massachusetts in which the plaintiffs allege that they were sexually abused by a brother or member of a religious order while they were minor children residing in a children's group home that employed the brother. The Massachusetts plaintiffs filed a proceeding in Maryland seeking discovery of the brother's mental health records that they believe are in the custody of Saint Luke Institute, Inc. ("SLI"), a facility located in Maryland. After considering the plaintiffs' motion for a court order to produce the records and SLI's opposition to disclosure, the Circuit Court for Prince George's County entered an order directing that SLI produce the brother's mental health records under seal to a Massachusetts court. Prior to ordering the disclosure of the records, the circuit court did not review the pleadings in the Massachusetts case, nor did the court conduct an *in camera* review of the records. SLI appealed the order to the Court of Special Appeals, which reversed the judgment and remanded the case for further proceedings.

For the reasons more fully set forth in this opinion, we affirm the judgment of the Court of Special Appeals and remand this proceeding to the circuit court for that court to

undertake an *in camera* review of the mental health records and to determine what portion of the records are relevant in accordance with its statutory obligation under HG § 4-307, and to enter an order transferring the portion of the records determined to be relevant under seal to the Massachusetts court for that court's determination as to what should be released to counsel.

## I.

## Background

### A. *Massachusetts Action*

This case arises from a discovery motion related to a civil lawsuit pending in the Massachusetts Superior Court involving four consolidated cases alleging negligent hiring and supervision of Brother Edward Anthony Holmes, who was a member of the Congregation of Sacred Hearts ("CSH"), and who is now deceased. In 2017, Petitioner, Andre Jones, the lead plaintiff, filed a lawsuit in the Massachusetts Superior Court, Trial Division in Suffolk County ("Massachusetts Court"), naming as defendants the Roman Catholic Archbishop of Boston and the CSH ("Massachusetts Action").[1] Although the Massachusetts complaint is not included in the record of the proceedings in this case, according to proffers made by counsel for Mr. Jones, the suit alleges that Mr. Jones was sexually assaulted by Brother Holmes when he was a minor, while he was placed in his

---

[1] The pleadings in the Massachusetts Action were not presented to the circuit court in connection with the discovery motion, nor are they included in the record on appeal. The only Massachusetts pleading filed in this case is the Letters Rogatory issued by the Massachusetts Court. For purposes of this appeal, our description of the Massachusetts Action is based upon the proffers of counsel for Mr. Jones in his various pleadings filed in Maryland.

care at the Nazareth Child Care Center in Jamaica Plain, Massachusetts ("Nazareth"). According to Mr. Jones, the complaint in the Massachusetts Action includes counts alleging negligent hiring and negligent supervision of Brother Holmes by the defendants.[2]

Mr. Jones asserts that documents produced by the defendant CSH in discovery in the Massachusetts Action noted that Brother Holmes underwent psychotherapy at SLI in the early 1990s. SLI, located in Maryland, is a "Catholic organization with 40 years of experience treating Catholic clergy" and "offers a full range of psychological screening, treatment and educational services for Catholic clergy." Mr. Jones alleges that, according to the documents produced by the CSH, two psychiatric evaluation reports on Brother Holmes were written by SLI employees, dated June 28, 1991 and November 8, 1993.

The produced documents highlighted and summarized a "caution" contained in the 1993 report generated by SLI, stating, "[t]here are no reported signs that [Brother Holmes] has been sexually inappropriate. However, we would caution [] [Brother Holmes] and his order: there are many signs of risk that should not lightly be dismissed." The report also noted that Brother Holmes had "not worked through his experience of being molested as a child."

After Mr. Jones learned of the existence of the 1991 and 1993 reports, he requested that the reports and associated records be produced by the defendants in the

_____

[2] Mr. Jones' case was consolidated with three other companion cases by the Massachusetts Court. The Letters Rogatory reflects that the cases of Andre Jones, Lawrence Gay, John Doe SV, and John Doe RJ were consolidated. According to Mr. Jones, each plaintiff alleges similar child sexual assault and abuse perpetrated upon them by Brother Holmes while each was a minor and resident of Nazareth.

Massachusetts Action. Mr. Jones was informed that the mental health evaluation reports had been destroyed by the Roman Catholic Archbishop of Boston and the CSH in the early 2000s.

Unable to obtain the mental health evaluation reports directly from the defendants, Mr. Jones and the other plaintiffs sought production of the records from SLI by filing a Motion for the Issuance of Letters of Rogatory and a Commission[3] to Take the Deposition of a Non-Resident Witness Custodian of Records. The Massachusetts Court entered an order granting the motion and issued a Commission and Letters Rogatory.

The Letters Rogatory requests "as a matter of comity" that an appropriate Maryland Court "issue process to compel [t]he [c]ustodian of [r]ecords for St. Luke Institute . . . to appear" for a deposition in Maryland and to produce documents. The Letters Rogatory acknowledges that SLI is located out of state and is therefore not subject to the jurisdiction of the Massachusetts Court, and that its appearance "can be compelled only by process issued by the appropriate authority in the State of Maryland." The Letters Rogatory explained that "the production of documents and things for copying and inspection *are left entirely to your Court's procedure*." (Emphasis added). The Letters

---

[3] A letter rogatory is a letter from a Massachusetts court requesting that the appropriate authority in another jurisdiction assist in obtaining discovery within that state's borders for use in Massachusetts litigation. The authority to issue a letter rogatory is set forth in Mass. Gen. Laws ch. 223A, § 10 (2020), which provides that an in-state litigant may take "[a] deposition to obtain testimony or documents or other things in an action pending in [Massachusetts] . . . outside [Massachusetts] . . . pursuant to a letter rogatory issued by the court." *Id.* § 10(a), (a)(3). Section 10(b) sets forth the process by which a party may request a Massachusetts court to issue a letter rogatory. Specifically, § 10(b) provides that "a letter rogatory shall be issued after notice and application to the court, and on terms that are just and appropriate." *Id.* § 10(b).

Rogatory reflect that the documents to be produced are "all documents related to Brother Edward Anthony Holmes, including but not limited to, psychotherapy examinations/risk assessments that were conducted on June 28, 1991 and November 8, 1993 at St. Luke Institute."

### B. *Maryland Circuit Court Proceeding*

After the Letters Rogatory was issued by the Massachusetts Court, Mr. Jones sought a subpoena from the Circuit Court for Prince George's County requesting that SLI produce Brother Holmes' mental health records. SLI filed a motion to quash the subpoena, arguing that under HG § 4-307, mental health records may only be disclosed to a private party in litigation by a court order, not through a subpoena.

Apparently realizing the error in attempting to obtain the records by subpoena as opposed to a court order, Mr. Jones filed a cross-motion for a court order to produce the mental health records. In connection with the motion for a court order, counsel for Mr. Jones filed a memorandum in which counsel described the underlying Massachusetts Action, including the allegations of sexual abuse, and represented that the litigation included counts for negligent hiring and negligent supervision. In the memorandum, Mr. Jones alleged that he was sexually assaulted by Brother Holmes after being removed from the custody of his parents and placed at Nazareth. The memorandum stated that three other individuals had made similar allegations of sexual assault by Brother Holmes while the plaintiffs were residents of Nazareth, and that those cases had been consolidated with Mr. Jones' case in the Massachusetts Action. Mr. Jones described the discovery that had been undertaken by the parties, explaining that defendant CSH had produced written documents

5

consisting of handwritten and typed notes from SLI, which referenced two psychiatric evaluations that were performed on Brother Holmes, dated June 28, 1991 and November 8, 1993. Counsel for Mr. Jones attached to the motion copies of the handwritten and typed notes that had been produced by CSH. Mr. Jones argued that the "relevance of these psychiatric evaluations and mental health records to the underlying case [were] self-evident." Specifically, Mr. Jones contended that "[w]hat was known about Holmes' propensity to sexually abuse minors in his care and when that was known is a central issue in the case." Counsel proffered that Mr. Jones had requested that CSH produce the underlying records or reports but was informed that the mental health reports had been destroyed by CSH in the early 2000s.

In the memorandum, Mr. Jones asserted that Brother Holmes' sexual abuse of minors at Nazareth was "public knowledge," and attached as exhibits copies of three articles from Boston newspapers,[4] which reported that Brother Holmes pleaded guilty in 2006 to repeatedly raping and assaulting two boys in the 1970s and 1980s and that he was sentenced to five years and one day for the crimes. The articles recite that Brother Holmes was a member of CSH and had been assigned to work at Nazareth, which was run by the Archdiocese of Boston. The sex crimes occurred while the children were

---

[4] According to Mr. Jones, the articles, which appeared in the Boston Globe, TheBostonChannel.com, and the Jamaica Plain Gazette, had been produced by the defendant Roman Catholic Archdiocese of Boston in discovery in the Massachusetts Action. The victims of Brother Holmes' crimes who were described in the articles are not the plaintiffs in the Massachusetts Action.

6

living at the Nazareth facility. Mr. Jones also pointed out that Brother Holmes died in August 2011.

SLI filed a memorandum in opposition, arguing that the circuit court would need to examine pleadings in the Massachusetts Action to properly determine whether Brother Holmes' mental condition had been raised and whether such evidence was relevant.

In a memorandum opinion and order dated January 23, 2019, the circuit court granted Mr. Jones' cross-motion for an order to produce Brother Holmes' mental health records and ordered that any responsive records "shall be filed under seal to the Superior Court of the Commonwealth of Massachusetts." In its memorandum opinion, the circuit court determined that "records already in possession of [Mr. Jones] from [SLI] do suggest that more records would be directly relevant to the [Massachusetts Action], which involve negligent hiring and negligent supervision of Brother Holmes." In rejecting SLI's argument that the circuit court must examine the pleadings in the Massachusetts Action to properly determine whether Brother Holmes' mental condition has been raised and whether such evidence is relevant, the circuit court stated that it did "not believe that two separate courts are required to review what are likely extensive pleadings in order to adjudicate this discovery request. To do so is contrary to the interests of judicial economy, especially as the trial court can and will be the ultimate gatekeeper of evidence at trial."

The circuit court judge proceeded to apply a balancing test that is undertaken when a governmental agency seeks discovery of confidential medical records in connection with a government investigation, which was first outlined in *United States v.*

7

*Westinghouse Electric Corp.*, 638 F.2d 570, 578 (3d Cir. 1980), and was adopted by the Court of Special Appeals, in *Dr. K. v. State Board of Physician Quality Assurance*, 98 Md. App. 103, 113–15, *cert. denied*, 334 Md. 18, *cert. denied*, 513 U.S. 817 (1994) and later adopted by this Court in *Doe v. Maryland Board of Social Work Examiners*, 384 Md. 161, 186 (2004).[5]  Applying the *Westinghouse* balancing analysis, the circuit court concluded that "there is a compelling state interest in aiding the Plaintiff [to] obtain the requested records."  The circuit court reasoned that "[t]his case is one of the predatory sexual assault of minors, and there are multiple alleged victims, at least one of whom was sent to this institution by the state itself."  The circuit court stated that the "[p]laintiff in this instance case was taken from the custody of his parents by the Commonwealth of

---

[5] The *Westinghouse* analytical framework, first adopted by the Court of Special Appeals in *Dr. K*, and later adopted by this Court in *Doe*, applies in circumstances in which a government agency is seeking medical records of a third party, and requires the balancing of several factors when weighing an individual's right to privacy in his or her medical records against the government's competing interest in obtaining access to those records. *See United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 578 (3d Cir. 1980); *Dr. K. v. State Bd. of Physician Quality Assurance*, 98 Md. App. 103, 113–15, *cert. denied*, 334 Md. 18, *cert. denied*, 513 U.S. 817 (1994); *Doe v. Maryland Bd. of Soc. Work Exam'rs*, 384 Md. 161, 184 (2004).  Specifically, when a government actor seeks disclosure of an individual's medical records, the *Westinghouse* balancing framework requires that the court consider

> the type of record requested, the information it contains, the potential for harm in subsequent nonconsensual disclosure, the injury in disclosure to the relationship for which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the *government's need for access*, and whether there is an express statutory mandate, articulate public policy, or other public interest militating towards access.

*Doe*, 384 Md. at 184–85 (quoting *Dr. K*, 98 Md. App. at 114–15 (citing *Westinghouse*, 638 F.2d at 578)) (emphasis added).

Massachusetts, and place[d] in the care of Brother Holmes." The circuit court balanced what it considered to be the "compelling state interest" in disclosure against any intrusions into Brother Holmes' privacy interest in the records, by concluding that "the records requested do not at this time injure or embarrass Brother Holmes, who is now deceased and who previously admitted to rape and sexual assault of minors." Accordingly, the circuit court determined that there were "compelling factors towards ordering the release of this requested information, with the [Massachusetts] trial court as the gatekeeper and safeguard for the Defendants." Based upon this analysis, the circuit court entered an order directing that SLI produce, under seal, Brother Holmes' mental health records to the Massachusetts Court.

After the circuit court denied SLI's motion for reconsideration and request to vacate the order, SLI filed a timely appeal to the Court of Special Appeals, and a motion to stay the production of the mental health records. The motion to stay was granted by the Court of Special Appeals.

### C.  Court of Special Appeals

The Court of Special Appeals reversed the decision of the circuit court and remanded the case for additional proceedings. *St. Luke Inst., Inc. v. Jones*, 242 Md. App. 617, 631 (2019). The Court of Special Appeals determined that the circuit court had the authority to order SLI to produce Brother Holmes' confidential medical records under the Confidentiality Act. *Id.* at 625. However, the intermediate appellate court pointed out that under our case law, where the information sought to be discovered is confidential, before disclosure of the materials in discovery, the "moving party must show, usually at a hearing,

9

some connection between the records sought, the issue before the court, and the likelihood that information relevant to the trial would be discovered." *Id.* at 626 (quoting *Goldsmith v. State*, 337 Md. 112, 127–28 (1995) (quoting *Zaal v. State*, 326 Md. 54, 83 (1992))) (emphasis omitted).

Based upon the pleadings filed by Mr. Jones in connection with his motion to compel, the Court of Special Appeals concluded that "[Mr.] Jones met his burden in establishing the need for pre-trial disclosure of Brother Holmes' mental health records." *Id.* at 626. The intermediate appellate court explained that "[a]s we see it, the circuit court did not abuse its discretion in finding that, based on the two reports and averments made by Jones, Holmes' mental health records with SLI were likely relevant to the Massachusetts Action and subject to discovery." *Id.* at 627.

Believing that SLI was asserting Brother Holmes' patient-therapist privilege,[6] the Court of Special Appeals rejected any assertion that the records could not be disclosed based upon privilege. *Id.* at 628. The intermediate appellate court explained that, although Maryland recognizes a patient-therapist privilege, "[t]he privilege belongs to the patient to assert, not to the psychiatrist or psychologist." *Id.* (cleaned up). The intermediate appellate court declined to address SLI's arguments with respect to Brother Holmes' privacy interest in the mental health records because the court concluded that SLI lacked the requisite standing to advance the argument on Brother Holmes' behalf. *Id.* at 628 n.6.

---

[6] As discussed *infra*, it does not appear from our review of the record that SLI was asserting patient-therapist privilege on Brother Holmes' behalf—as opposed to Brother Holmes' privacy rights under the Confidentiality Act or the Constitution—either before the trial court or on appeal.

10

Although the Court of Special Appeals determined that Mr. Jones had made a sufficient proffer establishing a need for pre-trial disclosure of Brother Holmes' mental health records, and that the records were not barred from disclosure under a statutory privilege or the Confidentiality Act, the court agreed with SLI that the circuit court erred in ordering that Brother Holmes' entire mental health file be transferred to the Massachusetts Court without examining the file for relevancy. *Id.* at 629. The intermediate appellate court explained that, pursuant to HG § 4-307(c), the circuit court was only authorized to permit release of records that are determined to be relevant to the Massachusetts Action. *Id.* The Court of Special Appeals also agreed with SLI that the appropriate manner for the circuit court to undertake its statutory review was an *in camera* review of Brother Holmes' mental health records to determine what portion was relevant to the Massachusetts Action, and therefore, should be produced in discovery. *Id.* at 630. Relying on this Court's analysis in *Zaal v. State*, 326 Md. 54, 58 (1992), the Court of Special Appeals stated that it was "appropriate that the circuit court order the portion of Brother Holmes' mental health records deemed relevant to the Massachusetts Action be produced under seal to the Massachusetts Court for that court's determination as to what should be released to counsel." *Id.* at 631.

SLI petitioned for a writ of *certiorari*, asserting, among other things, that the Court of Special Appeals erred by analyzing the discovery request under a privilege statute, and by holding that SLI had no standing to raise Brother Holmes' privacy interests in the mental

health records.  We granted *certiorari* to consider the following questions, which we have

consolidated and rephrased as follows[7]:

1.  Did the circuit court apply the correct legal standard for the disclosure of mental health records when requested by a private party litigant where the patient has not authorized disclosure?

2.  Does a health care provider in custody of a patient's mental health records have standing under the Confidentiality Act, § HG 4-307(k)(6) to raise the patient's objections to disclosure?

For the reasons set forth below, we answer the first question in the negative.  The

circuit court did not apply the correct legal standard when considering whether to order the

---

[7] The questions presented in the writ of *certiorari* were:

1.  Does SLI have standing to raise the constitutional right of privacy on behalf of a mental health patient?

2.  If SLI has the requisite standing, must the court first determine whether the constitutional right of privacy of the person whose records are sought has been superseded prior to any release of mental health records or can the court immediately proceed to the question of release without first determining that the right of privacy has been superseded?

3.  If the constitutional right of privacy is required to be ruled upon by the court to determine if it has been superseded, then what are the standards to be applied by the court when a private party litigant rather than a state agency is making the request?

4.  If the determination is made that records may be released, does the party requesting the release of mental health records have the burden of identifying to the court the nature of the information being sought for release from the mental health records prior to the court undertaking its *in camera* review?

12

release of confidential mental health records. Concerning the second question, we hold that a health care provider has standing to raise a patient's objections to disclosure under the Confidentiality Act, HG § 4-307(k)(6). We affirm the judgment of the Court of Special Appeals and remand this case to the Circuit Court for Prince George's County for further proceedings consistent with this opinion.

## II.

## Standard of Review

This case involves an attempt by Massachusetts litigants to obtain records from a Maryland institution pursuant to a Maryland court order for use in the Massachusetts Action. Although this matter is not a traditional Maryland discovery dispute, the same principles that govern Maryland discovery matters also apply here. With respect to the application of discovery rules, "it is long settled that the trial judges are vested with a reasonable, sound discretion in applying them, which discretion will not be disturbed in the absence of a showing of its abuse." *Ehrlich v. Grove*, 396 Md. 550, 560 (2007) (internal quotations and citations omitted). Although we generally review discovery disputes under an abuse of discretion standard, the dispute in this case involves a civil litigant's right to obtain mental health records that are ordinarily protected from disclosure by statute and may only be obtained in accordance with the express statutory provisions authorizing such disclosure. When a trial court's order involves an interpretation and application of statutory and case law, we must determine whether the lower court's conclusions are

legally correct under a *de novo* standard of review. *Nesbit v. Gov't Emps. Ins. Co.*, 382 Md. 65, 72 (2004).

## III.

## Discussion

### A. *Parties' Contentions*

SLI contends that under the Confidentiality Act, the circuit court erred by ordering the release of all of Brother Holmes' mental health records to the Massachusetts Court without first conducting an *in camera* review and making a relevancy determination. SLI points out that under HG § 4-307(c), a private party litigant may obtain disclosure of only the portions of the mental health records that are relevant. SLI asserts that the Confidentiality Act requires that the circuit court review the records and make the relevancy determination, and that the circuit court is not permitted to abdicate its responsibilities by releasing the entire contents of the records to the Massachusetts Court without first undertaking its own review. SLI notes that this Court described the *in camera* review process to be undertaken by a court when a private party litigant seeks discovery of confidential records in *Baltimore City Department of Social Services v. Stein*, 328 Md. 1, 14 (1992). SLI posits that the circuit court should have applied the same *in camera* review process in this instance. In connection with the court's statutory obligation under the Confidentiality Act to review the records for relevancy, SLI contends that the circuit court erred by accepting Mr. Jones' representations concerning the Massachusetts Action without reviewing the complaint or related pleadings to determine the relevance of the mental health records to the allegations asserted in that case. SLI

14

does not contend that the circuit court was required to review all the pleadings in the Massachusetts Action. Rather, SLI asserts that the burden was on the movant to establish the relevancy of the mental health records by focusing the court's attention on specific issues alleged in the Massachusetts Action. SLI also contends that the circuit court incorrectly applied the *Westinghouse* factors as part of its analysis, pointing out that the *Westinghouse* balancing analysis applies when a governmental agency is seeking medical records, not when a private party litigant is seeking records from a health care provider. Although SLI recognizes that the *Westinghouse* balancing test does not apply because there is no state action that would require balancing a "compelling state interest" in disclosure against the individual's privacy rights in the records, SLI argues that this Court should adopt a "compelling need" standard when a private litigant seeks discovery of confidential records in the context of civil discovery, which SLI asserts should be determined on a case-by-case basis. To demonstrate a "compelling need," SLI contends that the private party litigant must do more than simply represent that the litigant needs the records to prove its case.

Finally, SLI contends that the Court of Special Appeals erred in analyzing "the issues in this case under the doctrine of privilege," because SLI did not assert any privilege. SLI also argues that the Court of Special Appeals erred when it failed to consider SLI's standing to raise Brother Holmes' privacy rights under HG § 4-307(k)(6). SLI asserts that

15

under the plain language of that subsection, SLI has standing to raise Brother Holmes' privacy rights.[8]

In response, Mr. Jones argues that the Court of Special Appeals' holding, which remands the case to the circuit court for an *in camera* review of the records, is reasonable and appropriate and provides an "exceeding level of scrutiny" prior to any subsequent review by the Massachusetts Court or the litigants. Mr. Jones contends that, to the extent that records are ultimately produced to the parties in the underlying action, they will only be produced under a protective order prohibiting public disclosure/dissemination. With respect to Brother Holmes' right to privacy, Mr. Jones asserts that there is no "right to privacy in public facts," and given Brother Holmes' admission of sexual assault and related convictions, matters pertaining to Brother Holmes' mental health records and to his risk of being a child predator are "public knowledge." Mr. Jones also asserts that the fact that Brother Holmes is now deceased is certainly a relevant factor in determining what right to privacy, if any, exists over SLI's records. In any event, Mr. Jones contends that SLI has no standing to assert Brother Holmes' right to privacy because that right is a "personal one" and argues that HG § 4-307(k)(6) only gives the patient or "person in

---

[8] Although SLI asserts in its brief that the circuit court erred in failing to conduct a hearing under Maryland Rule 2-311(f), it did not raise this issue in its petition for writ of *certiorari*. It is well-settled that this Court "ordinarily do[es] not . . . consider an issue not raised in a petition for *certiorari*." *Renbaum v. Custom Holding, Inc.*, 386 Md. 28, 33 n.2 (2005). In the rare circumstances where this Court addresses an issue not raised in a petition for *certiorari*, it is generally because the issue is "implicitly contained within the question on which we granted *certiorari*." *State v. Roshchin*, 446 Md. 128, 147 (2016). We determine that there is no basis to consider the propriety of the trial court's decision to rule on SLI's and Mr. Jones' motions without a hearing, as the issue was neither explicitly nor implicitly raised in the petition for writ of *certiorari*.

16

interest" the right to assert a "constitutional right." Assuming the statute confers standing on SLI to object to the disclosure on Brother Holmes' behalf, Mr. Jones contends that Brother Holmes waived his right to privacy in the records. With respect to the circuit court's application of the *Westinghouse* factors, Mr. Jones contends that he has demonstrated a "compelling state interest" in the disclosure of the records.

### B. Disclosure of Mental Health Records in Private Civil Litigation—The "Balancing Framework" Established by Applicable Rules, Statutes, and Case Law

In this case, we are being asked to determine the legal standard to be applied under the Confidentiality Act when a private party in civil litigation seeks discovery of a third party's mental health records where the patient has not authorized the disclosure.[9] Although the specific request at issue in this case involves an additional procedural complication—namely, that the records are being sought in connection with litigation pending in another state—our analysis and consideration of the threshold determination of whether these records are discoverable, and the parameters for disclosure, is the same regardless of whether the litigation was initiated in Maryland or elsewhere.

---

[9] As noted in our discussion of the parties' contentions, SLI asserts that the Court of Special Appeals erred when it discussed the patient-therapist privilege, codified in Md. Code Ann., Cts. & Jud. Proc. § 9-109(b)(1)–(2) (2020). The Court of Special Appeals addressed the patient-therapist privilege because the court believed that SLI was raising the privilege as a basis for non-disclosure. *St. Luke Inst., Inc. v. Jones*, 242 Md. App. 617, 627 (2019). Based upon our review of the record and the briefs, it does not appear that SLI was asserting a privilege. Rather, SLI's position was that the circuit court failed to comply with the mental health records disclosure provisions under the Confidentiality Act, HG § 4-307. Regardless of whether privilege was raised below, SLI is not asserting any privilege in connection with this Court's review. Accordingly, we do not address any privilege as part of this opinion and our discussion and holding is limited to the disclosure provisions under the Confidentiality Act.

17

As described more fully below, the Maryland discovery rules, the Confidentiality Act, and our case law establish the framework for a trial court to apply when balancing the civil litigant's need to obtain relevant, discoverable information against the patient's privacy interests in the confidential mental health records.

### 1. Maryland Discovery Rules Generally

Maryland's discovery rules, governed by Chapter 400 of Title 2 of the Maryland Rules, "were deliberately designed to be broad and comprehensive in scope." *Ehrlich v. Grove*, 396 Md. 550, 560 (2007) (internal quotations omitted). Maryland Rule 2-402(a) permits, in pertinent part, a party to obtain discovery "regarding any matter that is not privileged . . . if the matter sought is relevant to the subject matter involved in the action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." As we have stated on numerous occasions, "Maryland's discovery rules are to be liberally construed." *Ehrlich*, 396 Md. at 560 (first citing *Kelch v. Mass Transit Admin.*, 287 Md. 223, 229 (1980); then citing *Klein v. Weiss*, 284 Md. 36, 55 (1978)). There are limitations, however, on the general proposition that discovery rules are to be liberally construed.

### 2. Statutory Provisions Governing Disclosure of Mental Health Records Under the Confidentiality Act

In this case, the limitation comes in the form of the pertinent statutory provisions governing the confidentiality and disclosure by health care providers of medical records, including mental health medical records that are set forth in the Confidentiality Act, HG §§ 4-301 through 4-309. The Confidentiality Act addresses the confidentiality of medical

18

records in general. HG § 4-302(a) requires health care providers to keep medical records

confidential, and allows disclosure only as provided by Maryland law.[10]

---

[10] Medical records, including mental health records, are also subject to the confidentiality provisions of the Health Insurance and Portability Accountability Act ("HIPAA"), 42 U.S.C. § 1320d *et seq.* HIPAA provides for the confidentiality of individually identifiable health information and establishes the Department of Health and Human Services' ("HHS") authority to regulate the disclosure of medical and mental health records. 45 C.F.R. § 160.203(b) establishes federal preemption of state laws unless the state regulation is more protective of protected health information.

For purposes of this case, our focus is solely on the Confidentiality Act, HG §§ 4-401 through 4-309. SLI did not raise any objection to the disclosure of the records under HIPAA. SLI acknowledges in its pleadings that the Confidentiality Act contains more restrictive provisions for the disclosure of mental health records than its federal counterpart, and therefore is controlling. Comparing the applicable provisions of the Confidentiality Act with the applicable HIPAA provisions, we agree that, although the provisions are similar, the Maryland statute provides greater protections with respect to disclosure of mental health records.

45 C.F.R. § 164.512 sets forth the circumstances in which a covered health care provider "may use or disclose protected health information without the written authorization" of an individual. Subsection (e) of that regulation governs unauthorized disclosure of protected health information in the course of a judicial or administrative proceeding. 45 C.F.R. § 164.512(e). Under that subsection, health care providers and other covered entities are permitted to disclose protected health information without the patient's consent: (1) in response to a court order, provided only the information specified in the court order is disclosed; or (2) in response to a subpoena or discovery request if the health care provider receives adequate assurance that the individual whose records are requested has been given sufficient notice of the request, or if reasonable efforts have been made to secure a protective order. 45 C.F.R. § 164.512(e)(1)(i), (ii). Protective orders must (1) prohibit use of the protected health information outside the litigation process; and (2) require the return or destruction of the records, including copies made, at the conclusion of the litigation. 45 C.F.R. § 164.512(e)(1)(v).

In contrast to the federal regulations, the Confidentiality Act distinguishes between mental health records and medical records, affording greater protections against the unauthorized disclosure of mental health records by (1) requiring a court order prior to their disclosure, *see* HG § 4-307(k)(1)(iv), and further requiring that (2) only the information in the record relevant to the purpose for which disclosure is sought may be released. *See* HG § 4-307(c). Additionally, the Confidentiality Act restricts "rediscosure" of medical records—

19

Where the records sought to be disclosed consist of medical records developed in connection with the provision of mental health services,[11] the General Assembly has imposed additional limitations, which are set forth in HG § 4-307.[12] *First*, unlike other types of medical records that may be disclosed to a third party by subpoena, a court order is required where the disclosure of mental health records is sought by a private litigant in a civil proceeding in which the person in interest has not authorized the disclosure. As it pertains to this case, HG § 4-307(k)(1) requires a health care provider to disclose a medical record to a court or a party to a court proceeding "in accordance with a court order[.]"[13] *Second*, the Confidentiality Act provides that "[w]hen a medical record

---

a restriction not contained in HIPAA. *See* 88 Opinions of the Attorney General 205, 216 (2003) available at [https://perma.cc/H2T7-K7C2].

[11] Under the Confidentiality Act, "mental health services" are defined as "health care rendered to a recipient primarily in connection with the diagnosis, evaluation, treatment, case management, or rehabilitation of any mental disorder." HG § 4-301(k)(1).

[12] *See* HG § 4-307(b), which provides that "[t]he disclosure of a medical record developed in connection with the provision of mental health services shall be governed by the provisions of this section in addition to the other provisions of this subtitle."

[13] HG § 4-307(k) provides that:

> (1) A health care provider shall disclose a medical record without the authorization of a person in interest:
>
>                     \* \* \*
>
> (iv) in accordance with a court order, other than compulsory process compelling disclosure, as permitted under § 9-109(d), § 9-109.1(d) or § 9-121(d) of the Courts and Judicial Proceedings Article, or as otherwise provided by law, to:

developed in connection with the provision of mental health services is disclosed without the authorization of a person in interest, only the information in the record relevant to the purpose for which disclosure is sought may be released." HG § 4-307(c).[14] If medical records are authorized to be disclosed, the Act also prohibits redisclosure of the records.[15] Additionally, disclosing a medical record in violation of the subtitle subjects the violator to a possible criminal fine and to actual damages in a civil suit. *See* HG § 4-309.

Taken together, where a private party litigant seeks the disclosure of mental health records and the person in interest has not authorized the disclosure, given the conditions and limitations imposed by the General Assembly in HG § 4-307: (1) the party seeking

---

1. A court;
2. An administrative law judge;
3. A health claims arbitrator; or
4. A party to a court, administrative, or arbitration proceeding.

The compulsory process provisions described in subsection (iv) are not applicable here.

[14] The Confidentiality Act contains protections similar to HIPAA. 45 C.F.R. § 164.512(e)(1)(i) permits a health care provider to disclose only the protected health information expressly authorized by court order.

[15] HG § 4-302(d) provides in part:

> *Redisclosure.*—A person to whom a medical record is disclosed may not redisclose the medical record to any other person unless:
>
> > (1) The redisclosure is:
> > (i) Authorized by the person in interest;
> > (ii) Otherwise permitted by this subtitle; . . .

There is no other provision in the subtitle that would permit redisclosure of Brother Holmes' mental health records.

21

their disclosure must file a motion requesting a court order compelling their disclosure; and (2) prior to the court authorizing the disclosure pursuant to a court order, the court must undertake an examination of the documents sought to be disclosed and any other necessary information in order to make a relevancy determination and to ensure that it limits disclosure only to the information that may be relevant.

In response to a motion seeking a court order compelling or authorizing the disclosure of mental health records, the Confidentiality Act also provides a health care provider, recipient, or person in interest with the right to object to the disclosure. *See* HG § 4-307(k)(6) ("This subsection may not preclude a health care provider, a recipient, or a person in interest from asserting in a motion to quash or a motion for a protective order any constitutional right or other legal authority in opposition to disclosure."). By its plain terms, HG § 4-307(k)(6) authorizes a health care provider to assert, in a motion, a "constitutional right . . . in opposition to disclosure." In *Maryland State Board of Physicians v. Eist*, 417 Md. 545, 564 (2011), we stated that this provision of the Act "grants standing to the health care provider, as well as others opposed to disclosure, to raise the patient's constitutional rights or other grounds for nondisclosure, by filing in court a motion to quash or a motion for a protective order."

By establishing a process whereby a private party litigant may only obtain disclosure of mental health records by a court order, and granting standing to the health care provider or other authorized person to object to the disclosure by filing a motion in opposition, the provisions of the Confidentiality Act dovetail with the court's broad discretion to enter a protective order under Maryland Rule 2-403. In *Eist*, we recognized

22

that where medical records were sought in connection with a licensing investigation, filing a motion to quash a subpoena under Maryland Rule 2-510 or motion for a protective order under Maryland Rule 2-403 was the "route chosen by the General Assembly for the resolution of constitutional or other objections to the subpoena[,]" *id.* at 565, or in this case, a motion requesting a court order.[16] The process necessarily requires a balancing of the relevance of the records and the movant's need for disclosure on the one hand, and the patient's privacy interests implicated by the disclosure on the other.

### 3. Protective Orders

Maryland Rule 2-403(a) governs the application for protective orders. It states:

> On motion of a party, a person from whom discovery is sought, . . . and for good cause shown, the court may enter any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had, . . . (3) that the discovery may be had only on specified terms and conditions, . . . (6) that discovery be conducted with no one present except persons designated by the court . . . .

Maryland Rule 2-403(b) provides that "[i]f the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery." As applicable here, the plain language of the

---

[16] In explaining the General Assembly's "chosen route" for objecting to a discovery request seeking medical records, we further noted that "the General Assembly did not provide that the health care provider could refuse to comply with the subpoena, fail to file a motion to quash or a motion for a protective order, and later, in a disciplinary action [against the physician for failing to comply with a subpoena], defend on the ground that the patient's privacy rights were infringed by the subpoena." *Maryland State Bd. of Physicians v. Eist*, 417 Md. 545, 565 (2011) (footnote omitted).

23

rule provides the trial court with broad discretion to fashion a protective order in a manner that balances the movant's interest in obtaining relevant discovery with the patient's privacy interests. Although the rule confers considerable discretion on the trial court, as the Court of Special Appeals has previously observed, there are few Maryland appellate decisions describing or interpreting this rule. *Tanis v. Crocker*, 110 Md. App. 559, 574 (1996). The lack of case law discussing protective orders arises from the fact that "[i]t is well settled in Maryland that discovery orders usually are not immediately appealable." *Baltimore City Dep't of Soc. Servs. v. Stein*, 328 Md. 1, 14 (1992) (citation omitted).[17] The

---

[17] This principle is subject to limited exceptions. For example, in *Baltimore City Department of Social Services v. Stein*, 328 Md. 1, 20–21 (1992), we held that "a discovery order directed to a governmental agency, a non-party to the underlying action, requiring the disclosure of files which contain information which, by statute, is confidential except when disclosed by the agency or by court order, is immediately appealable by the agency." In *Ehrlich v. Grove*, 396 Md. 550, 564 (2007), we held that the collateral order doctrine applied to a discovery order entered by a trial court for records where the Governor of the State of Maryland had asserted executive privilege with respect to certain documents sought in discovery because "separation of powers principles are implicated[.]" Although we granted review in that case, we pointed out that "the collateral order doctrine is a limited exception to the principle that only final judgments are appealable and it may only be invoked in extraordinary circumstances when the conjunctive four-part test is met." *Id.* at 563–64. *Ehrlich* discusses in detail the collateral order doctrine, and its four requirements, which "are very strictly applied." *Id.* at 561–65. In *St. Joseph Medical Center, Inc. v. Cardiac Surgery Associates, P.A.*, 392 Md. 75, 91 (2006), we held that a hospital was entitled to appeal a circuit court's order authorizing the disclosure of records which the hospital contended were protected by statutory privilege despite the fact that the discovery order was not a final judgment and was not appealable under the collateral order doctrine. We held that

> [i]n situations where the aggrieved appellant, challenging a trial court discovery or similar order, is not a party to the underlying litigation in the trial court, or where there is no underlying action in the trial court but may be an underlying administrative or investigatory proceeding, Maryland law

24

discovery dispute in this case is somewhat atypical as the dispute arises from a discovery

request originating in another jurisdiction, which results in a final disposition of the

Maryland proceeding upon the entry of an order.

Although there is little Maryland case law providing guidance to trial courts on

protective orders in connection with civil discovery matters, we note that Maryland Rule

2-403(a) is based in large part on Federal Rule of Civil Procedure 26(c).[18] We agree with

our colleagues on the Court of Special Appeals that "when interpreting a Maryland Rule

that is similar to a Federal Rule of Civil Procedure this Court may look for guidance to

federal decisions construing the corresponding federal rule[.]" *Tanis*, 110 Md. App. at 574

(citations omitted). It is particularly instructive to look to the federal courts' application of

Federal Rule 26(c) in the context of protective orders involving the disclosure of medical

records protected by confidentiality provisions under the Health Insurance and Portability

Accountability Act ("HIPAA"), 42 U.S.C. § 1320d *et. seq.* or other state and federal

statutory confidentiality provisions or privileges. *See, e.g.*, *In re Sealed Case (Medical*

---

> permits the aggrieved appellant to appeal the order because,
> analytically, it is a final judgment with respect to that appellant.

*Id.* at 90 (citations omitted).

[18] The language of Federal Rule of Civil Procedure 26(c) is virtually identical to
Maryland Rule 2-403. Rule 26(c) authorizes a court:

> [F]or good cause, [to] issue an order to protect a party or person
> from annoyance, embarrassment, oppression, or undue burden
> or expense, including one or more of the following: . . . (D)
> forbidding inquiry into certain matters, or limiting the scope of
> disclosure or discovery to certain matters . . . .

25

*Records)*, 381 F.3d 1205, 1218 (D.C. Cir. 2004) (vacating a court order requiring production of all of the appellant group home residents' mental health records because the court failed to "weigh[] the appellant's privacy interests against the . . . evidentiary need" for the records).

4. Our Jurisprudence Concerning Discovery Requests for Confidential Records

Finally, we examine our jurisprudence involving discovery requests for confidential records in other contexts. As the Court of Special Appeals aptly observed, our case law requires that the litigant undertake an "additional hurdle" when the information sought to be discovered is confidential. *St. Luke Inst.*, 242 Md. App. at 626. Although these cases do not involve mental health records, they are nonetheless instructive because they address requests for discovery of confidential records protected by other statutes. *See Zaal*, 326 Md. 54; *Stein*, 328 Md. 1.

In *Zaal*, we considered a criminal defendant's right to access his victim's confidential school records. 326 Md. at 61. Although *Zaal* is a criminal case, it is nonetheless instructive. Mr. Zaal was charged with sexually abusing his granddaughter, which he denied. *Id.* In an effort to develop evidence with which to impeach her, he subpoenaed her school records. *Id.* at 62. The Board of Education ("Board") sought a protective order to prevent their disclosure. *Id.* At a hearing on the Board's motion, Mr. Zaal contended that the records were relevant because he was aware that the victim had an emotional disability requiring special education. *Id.* He asserted that the victim was in a "special classroom" as a result of an "emotional disturbance" which he contended would

26

bear on whether there was "a physical basis that would relate to her capacity to observe and relate" or "a mental deficiency leading to an inability to control actions." *Id.* at 62–63 (internal quotations omitted).

Rather than allowing Mr. Zaal, through his attorney, to review the records, the trial court conducted an *in camera* review, after which it granted the Board's motion for protective order and quashed the subpoena. *Id.* at 63. Concluding that "'there is really nothing I can see that in any significant way would relate to truth telling to this or any other occasion' and certainly, nothing 'show[ing] an inveterate tendency to lie[,]'" the court explained that to allow discovery could significantly compromise the child's educational future. *Id.* After the Court of Special Appeals affirmed the trial court, we reversed and remanded for further proceedings consistent with our opinion. *Id.* at 88–89. Our analysis involved balancing Mr. Zaal's "need to inspect" against the child's privacy interest in her school records. *Id.* at 81.

We equated Mr. Zaal's "need to inspect" with relevance and the existence of "a reasonable possibility that review of the records would result in discovery of usable evidence." *Id.* (internal quotations omitted). We also noted that the defendant's need to have access to the records in that case required consideration of several factors—the nature of the charges brought against the defendant, the relationship between charges and the information sought, and the likelihood that review of the records would result in the discovery of relevant information. *Id.* at 81–82. We explained that the circumstances will determine whether a sufficient relationship exists to require disclosure and, of course, that will in turn depend on the "proffer of relevance that the defendant makes." *Id.* at 82. We

27

recognized that "[t]he specificity of the proffer of what is sought necessarily depends on the nature of the issue, rather than the extent of the defendant's knowledge of the contents of the records." *Id.* We cautioned that when a trial court reviews the records alone,

> it must approach its task cognizant of the fact that it is not an advocate and, in most instances, will not, and, indeed, cannot be expected, to discern all the nuances or subtleties which may render an innocuous bit of information relevant to the defense. Thus the court's review is not to determine whether, and, if so, what, is "directly admissible," rather, it is to exclude from the parties' review material that could not, in anyone's imagination, properly be used in defense or lead to the discovery of usable evidence. Only when the records are not even arguably relevant and usable should the court deny the defendant total access to the records. In other words, except as to information, which, without regard to the perspective of the person conducting the review, has absolutely no possible relevance to the case, the trial court's *in camera* review should not be conducted with preclusive intent.

*Id.* at 87–88 (footnote omitted).

In *Stein*, we considered whether the Department of Social Services ("Department") was required to produce confidential records of a minor child and his parents to the defendant, Mr. Stein, in a personal injury action alleging lead paint poisoning. 328 Md. 1. Like the mental health records at issue in this case, under Md. Code Ann., Article 88A, § 6 (recodified 2007),[19] the records in the Department's possession were "confidential" and could only be released pursuant to a court order. *Id.* at 5–6. After Mr. Stein served a subpoena for the records, the Department filed a motion for a protective order asserting that the records were confidential and could only be released pursuant to a court order, and

---

[19] In 2007, Article 88A, § 6 was recodified without substantive revision in Maryland Code, Human Services § 1-201. 2007 Md. Laws 14.

further asserting that the records were privileged. *Id.* at 4–5. Mr. Stein filed a motion to compel. *Id.* at 5. In the motion, Mr. Stein did not proffer precisely what evidence he believed the Department's file would reveal regarding the minor plaintiff relevant to his defense of the lead paint suit. *Id.* at 6. "He simply asserted that evidence that shows the social circumstances under which the minor plaintiff was raised was relevant." *Id.* The trial court denied the Department's motion for a protective order and granted Mr. Stein's motion to compel. *Id.* at 7.

On appeal, we noted that although Article 88A, § 6 made the unauthorized disclosure of the records a criminal offense, but permitted the disclosure by court order, the statute provided "precious little guidance as to when a court order should issue." *Id.* at 23–24. We observed that the "issue presented . . . is one of first impression: whether, and to what extent, a state's interest in the confidentiality of its social services record[s] must yield to a civil defendant's right to discover favorable evidence bearing on his threatened loss of property." *Id.* at 24. The Department argued that the purpose of the statute was the promotion of "full and frank communication between those needing social services and those providing that assistance by protecting the confidentiality of both discussions and correspondence." *Id.* at 24–25 (internal quotations omitted). The Department asserted that Mr. Stein's proffer was insufficient to establish that the records would be relevant, and that confidentiality provisions could not be circumvented on a "mere possibility that it *might* possess records which *may* be relevant or *may* lead to the discovery of the admissible evidence in a case involving a personal injury accident or . . . lead paint poisoning." *Id.* at 25 (emphasis in original). Finally, the Department argued that the trial court erred in

29

entering an order authorizing the blanket disclosure of all records in the Department's possession without first reviewing the records for "potentially relevant information[,]" which "disregards entirely the privacy rights of the plaintiffs[.]" *Id.*

In juxtaposition to the Department's arguments, Mr. Stein contended that his property interest entitled him to due process. *Id.* at 25–26. He asserted that because the plaintiffs alleged physical, mental, and emotional injury as a result of the housing he provided, neither the Department nor the plaintiffs should be permitted to suppress information contained in the records that may be necessary to rebut the allegations. *Id.* at 26. Mr. Stein contended that "denying him the discovery necessary to present an available defense den[ied] him due process of law." *Id.*

In assessing the countervailing arguments presented by each party, we started our analysis with a discussion of *Zaal*, which we found to be instructive. *Id.* We acknowledged that, although *Zaal* involved a criminal case, we provided guidance on *in camera* proceedings where the discovery sought contained confidential information. *Id.* at 26–29. Applying the principles outlined in *Zaal*, we noted that although *Stein* was a civil case, "the stakes involved are high." *Id.* at 29. We explained that the records sought by Mr. Stein could potentially rebut the allegations that the plaintiffs must make and successfully prove in a lead poisoning case. *Id.* at 30. We stated that "[t]o the extent that the records contain information bearing on the child's behavior, particularly during the relevant period, the trier of fact will be able to assess whether that behavior was caused by lead poisoning or something else." *Id.* We determined that Mr. Stein had "alleged a potential and plausible relationship between the records and the plaintiffs' causes of action." *Id.* We concluded

that, like the defendant in *Zaal*, Mr. Stein had "proffered, given the circumstances, a 'need to inspect,' that is, 'a reasonable possibility that review of the records would result in discovery of usable evidence.'" *Id.* (quoting *Zaal*, 326 Md. at 81).

We recognized that Mr. Stein's "proffer is not overly specific[,]" which "is to be expected," since Mr. Stein had "not seen the records and cannot possibly know what is in them." *Id.* We concluded that Mr. Stein's proffer created a scenario that was "quite similar to credibility. As with credibility, whether information will be useful in rebutting the plaintiff's case or impeaching the plaintiff 'depends upon the circumstances, including context, and, to a large extent, the perception of the person interpreting it.'" *Id.* (quoting *Zaal*, 326 Md. at 82).

Reaching the same conclusion as in *Zaal*, we determined that Mr. Stein's proffer was "not frivolous, and, indeed, 'placed before the court [his] legitimate concerns and gave plausibility to his stated need to review the records for relevant information.'" *Id.* at 31 (quoting *Zaal*, 326 Md. at 83). In other words, we determined that Mr. Stein had "crossed the need to inspect threshold." *Id.* (quotations omitted).

Although we concluded that Mr. Stein had "crossed the need to inspect threshold[,]" we also pointed out that the plaintiff's "privacy concerns are . . . protected by [statute]." *Id.* Accordingly, we stated that "there should be no greater disclosure allowed than is necessary to meet the 'need to inspect' shown by [Mr. Stein]. That extent can only be determined upon a review of the records. In that regard[,] the options we identified in *Zaal* [pertaining to *in camera* review] are available . . . ." *Id.* We concluded that the trial court erred and reversed the judgment granting "unrestricted disclosure" of the plaintiff's files

31

and remanded the case for "further proceedings, consistent with the principles enunciated in . . . *Zaal*, 326 Md. at 81–87." *Id.*

Our jurisprudence in *Zaal* and *Stein* establish the process for a circuit court to undertake an *in camera* review where the discovery sought involves confidential records. We see no reason to deviate from the procedures established by these cases where the records are protected by the Confidentiality Act.

5. Putting all the Pieces Together—A Synthesis of the Applicable Law

In summary, where mental health records are requested by a private party litigant in a civil case, the Confidentiality Act, the Maryland discovery rules, and our case law establish the following process for disclosure. First, as noted above, where the discovery involves disclosure of mental health records without authorization of a person in interest, the Confidentiality Act only permits disclosure in accordance with a court order. HG § 4-307(k)(1). The party seeking discovery must file a motion for a court order compelling the disclosure. The party seeking disclosure of the records must establish a "need to inspect"— in other words, "a reasonable possibility that review of the records would result in discovery of usable evidence." *Stein*, 328 Md. at 27 (quoting *Zaal*, 326 Md. at 81) (internal quotations omitted).[20] In considering whether the party seeking the records has a need for

---

[20] SLI argues that the Court adopt a standard requiring the litigant to demonstrate a "compelling need" prior to the disclosure of records. We decline to add language or additional requirements to the balancing framework established by *Zaal* and *Stein.* Where records are confidential and protected by statute, the party seeking disclosure of the records must establish a "need to inspect"—in other words, "a reasonable possibility that review of the records would result in discovery of usable evidence." *Stein*, 328 Md. at 27 (quoting *Zaal*, 326 Md. at 81) (internal quotations omitted). The "need to inspect" standard established in *Zaal* and *Stein*, combined with the statutory requirement that the circuit court

32

access to the records, the court should consider the nature of the underlying litigation, the relationship between the records and any claim or defense, and the likelihood that review of the records would result in the discovery of relevant information. *See Stein*, 328 Md. at 27; *Zaal*, 326 Md. at 81–82. "[T]he circumstances will determine whether a sufficient relationship exists to require disclosure[,]" which will depend upon the "proffer of relevance" that the party seeking disclosure makes. *Stein*, 328 Md. at 27–28; *Zaal*, 326 Md. at 82.

When considering the moving party's proffer of relevance, the court should consider the request through the lens of the nature of the issue, rather than the specificity of the proffer. *Stein*, 328 Md. at 28. Where the records sought are confidential, the party seeking their disclosure may have little or no knowledge of their contents, but the records might, nonetheless, be relevant to the party's claim or defense. *See id.*; *Zaal*, 326 Md. at 82.

Once the movant makes a threshold proffer sufficient to enable the court to determine that there is a "need to inspect," the court must undertake an examination of the documents sought to be disclosed to ensure that the records sought are, in fact, relevant, and that the court limits disclosure only to the information that may be relevant. *See* HG § 4-307(c).

As part of the proceeding, a health care provider custodian or person in interest may object to the disclosure by filing a motion for protective order. In the motion, the health

---

only permit disclosure of those portions of the record that are relevant, strikes the appropriate balance between the need for disclosure on the one hand, and privacy interests on the other.

care provider or person in interest may raise any applicable "constitutional right or other legal authority in opposition to disclosure." HG § 4-307(k)(6); *Eist*, 417 Md. at 564.

With the relevancy proffer and any objections presented to the court, the court should undertake an *in camera* review of the records to determine their relevance to the moving party's claim or defense. When undertaking the relevancy determination as part of its *in camera* review, the court should be mindful of our direction given in *Zaal*. 326 Md. at 87–88. The court's role is not to determine whether the records are admissible, but rather, could the records lead the movant to the discovery of usable evidence. *Id.* at 88. "In other words, except as to information, which, without regard to the perspective of the person conducting the review, has absolutely no possible relevance to the case, the trial court's *in camera* review should not be conducted with preclusive intent." *Id.* at 88 (footnote omitted).

If the court determines that the records are relevant, it should enter an order authorizing the disclosure of those records it determines are relevant.[21] In connection with the entry of the order, the court has the discretion under Rule 2-403(b) to impose terms and conditions that it determines are appropriate on a case-by-case basis. Given the confidential nature of the records, the court should place conditions or restrictions on the disclosure to protect the privacy interests in the disclosed records. Such conditions should

---

[21] In undertaking its *in camera* review and relevancy analysis, we do not mean to suggest that the trial court needs to undertake the review on a line-by-line basis and redact accordingly. If the trial court determines that the records have any possible relevance to any claim or defense, they should be disclosed pursuant to an order with appropriate protections.

34

include a provision incorporating the language set forth in HG § 4-302(d) prohibiting rediscosure, and a provision requiring the return of any original records and the return or destruction of any copies made, at the conclusion of the litigation. Indeed, given the overlapping and preemptive force of HIPAA where the federal law provides greater protections, the protective order should incorporate the same conditions as would be required under HIPAA.[22] The order should also note or reference the protections of the Confidentiality Act that are more restrictive than HIPAA. *See* HG §4-302(d) (prohibiting rediscosure) and HG § 4-309 (establishing possible criminal fines and civil damages for the unauthorized disclosure or rediscosure of the records.).

### C. SLI's Standing to Raise Brother Holmes' Privacy Interests

Before we apply these principles to Mr. Jones' motion to compel, we address whether SLI has standing to assert any privacy interest that Brother Holmes, now deceased,

---

[22] Under HIPAA regulations,

> a qualified protective order means . . . an order of a court or a of an administrative tribunal or a stipulation by the parties to the litigation or administrative proceeding that:
>
> (A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and
>
> (B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

45 C.F.R. § 164.512(e)(1)(v).

may have in his mental health records. SLI contends that the Court of Special Appeals erred in failing to consider its standing to raise Brother Holmes' privacy interests. Given the express statutory provision conferring standing under the Confidentiality Act, we agree.[23]

Mr. Jones argues that SLI does not have standing to raise Brother Holmes' privacy interest in his mental health records. Mr. Jones contends that the right to privacy is a personal right that cannot be raised by another.[24] Mr. Jones also argues that the

---

[23] The Court of Special Appeals declined to consider SLI's arguments related to Brother Holmes' privacy interests in the medical records because neither Brother Holmes nor his personal representative had raised the patient-therapist privilege under CJ § 9-109(b)(1)-(2). *St. Luke Inst.*, 242 Md. App. at 628 n.6. The court appears to confuse a patient's statutory *privilege* (which was not raised by either Brother Holmes or SLI), with a patient's *privacy* interest in his or her medical records, which is protected by the Confidentiality Act. The intermediate appellate court reasoned that, because Brother Holmes had not asserted a privilege, "no party with the requisite standing" was present to advance such an argument related to a constitutional right to privacy. *Id.* (citations omitted). The court further determined that, because the case "can properly be disposed of on a non-constitutional ground[,]" it would not consider arguments related to Brother Holmes' privacy interests in the mental health records. *Id.* (citations omitted). We disagree with this analysis. First, SLI's arguments related to Brother Holmes' privacy interests arise in the context of the Confidentiality Act and have no relation to any argument that Brother Holmes may have been entitled to raise under a privilege statute. Second, the Confidentiality Act expressly confers standing on the health care provider to raise the patient's "constitutional right or other legal authority in opposition to disclosure." HG § 4-307(k)(6); *see also Eist*, 417 Md. at 564. Finally, the principle that a court will not address a constitutional issue when the case can be otherwise disposed of on a non-constitutional ground has no application here. In this case, the issue is whether the statute *permits* disclosure. Any constitutional or other legal argument arising from Brother Holmes' privacy interests would militate *against* disclosure. In other words, if we determine that a statute permits disclosure, it does not follow that we would not consider a constitutional issue that might preclude or limit disclosure.

[24] Mr. Jones relies upon California law and a federal case from the Seventh Circuit for the proposition that the right of privacy is personal and cannot be asserted by anyone other than the person whose privacy interest has been invaded. *See Lugosi v. Universal*

Confidentiality Act only gives the health care provider standing to assert *its* constitutional rights or legal authority in opposition to disclosure, not the patient's constitutional right. We disagree with Mr. Jones' interpretation.

As noted above, the Confidentiality Act, HG § 4-307(k)(6) expressly confers standing in these circumstances. Where a third party is seeking a patient's confidential mental health records in the possession of a third party health care provider, the General Assembly has expressly granted standing to the "health care provider, a recipient, or person in interest" to "assert[] in a motion to quash or a motion for a protective order any constitutional right or other legal authority in opposition to disclosure." HG § 4-307(k)(6). In *Eist*, we explained that "the statute grants standing to the health care provider, as well as others opposed to disclosure, to raise the patient's constitutional rights or other grounds for nondisclosure, by filing in court a motion to quash [in the case of a subpoena] or a motion for a protective order." 417 Md. at 564.

We reject Mr. Jones' argument that the plain language of the statute only permits a health care provider to raise *its* constitutional right. Such an interpretation is illogical and is also inconsistent with the common law standing principles that have been established by

---

*Pictures*, 25 Cal. 3d 813, 821–22 (Cal. 1979); *Maritote v. Desilu Prods., Inc.*, 345 F.2d 418, 419 (7th Cir. 1965). These cases, which address whether an individual can bring a common law right of privacy action on behalf of another, are inapposite to the very different facts of this case. Here, we must address whether a health care provider who is in custody of confidential records of a patient, may assert, on the patient's behalf, by motion for protective order, a constitutional right or other legal authority in opposition to disclosure.

37

the United States Supreme Court and this Court.[25] Although as a general rule, a person

may not assert the constitutional rights of others, there are exceptions to that rule. *Turner*

*v. State*, 299 Md. 565, 571 (1984). Notably, "[w]hen a relationship between a litigant and

a third person is such that the enjoyment of the third person's rights are 'inextricably bound

up with the activity the litigant wishes to pursue'; the litigant is 'very nearly, as effective a

proponent of the right' as the third person; and the rights of the third person are likely to

be 'diluted or adversely affected,' the general rule does not apply." *Id.* at 572 (quoting

*Singleton v. Wulff*, 428 U.S. 106, 115–16 (1976) (holding that physicians were permitted

to assert patients' constitutional rights)).

Our plain reading of the statute is consistent with federal courts' standing

jurisprudence on matters involving a custodian filing a motion for a protective order under

Fed. R. Civ. P. 26(c) on behalf of a non-party where the custodian is in possession of

confidential records. *See In re Search Warrant (Sealed)*, 810 F.2d 67, 69 (3d Cir. 1987)

---

[25] To support the position that SLI lacks standing to assert Brother Holmes' privacy interest in his mental health records, Mr. Jones and the Court of Special Appeals cite *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). *St. Luke Inst.*, 242 Md. App. at 628 n.6. In *Lujan*, the United States Supreme Court held that an environmental group lacked standing to challenge a governmental agency's alleged unlawful environmental regulations because the group did not demonstrate that they suffered or will suffer an "'injury in fact'— an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical[.]" 504 U.S. at 560 (some quotations omitted) (internal citations omitted). We determine that *Lujan* has no application to our standing analysis in this case. As noted above, HG § 4-307(k)(6), by its express terms, confers standing in such instances. Moreover, even in the absence of a statute, in the context of disclosure of medical records, the United States Supreme Court and other federal courts have held that the custodian of the medical records has the right to assert the privacy interests of the patient. *See Singleton v. Wulff*, 428 U.S. 106, 115–17 (1976); *In re Search Warrant (Sealed)*, 810 F.2d 67, 69 (3d Cir. 1987).

(holding that physician, as the custodian of records, had the right to assert his patients' privacy interest when medical records were seized as part of a fraud insurance investigation); *Westinghouse*, 638 F.2d at 574 (holding that an employer has standing to assert its employees' privacy interests where the subpoena issued by the National Institute for Occupational Safety and Health sought discovery of the employees' medical records).

Where a court order is sought compelling the disclosure of mental health records from a custodian, the custodian's interests and the patient's interests are inextricably intertwined. As we explained in *Eist*, any objections to the disclosure are *required* to be raised in a motion for a protective order. 417 Md. at 564–65. If an order authorizing the records is entered, a failure to comply could subject the health care provider or custodian to a motion for contempt. Moreover, there may be instances where, given the patient's mental or physical condition, he or she is not able to file a motion for a protective order within the time period established by the Maryland Rules. By granting standing to the health care provider to assert the patient's "constitutional rights or legal authority in opposition to disclosure[,]" the statute ensures that the patient's rights are protected even if the patient is unable to assert the right. HG § 4-307(k)(6). For these reasons, we hold that SLI has the authority to raise Brother Holmes' privacy interests in connection with its opposition to disclosure.

### D. In this Case, there is no State Action that Precipitates a Constitutional Analysis

Although we hold that SLI would have standing to assert any constitutional right that Brother Holmes would have against disclosure of his mental health records, here, the

party seeking discovery of the mental health records is a private party, instead of a government agency, and Brother Holmes' privacy interests are subject to a statutory balancing test, not a constitutional "compelling state interest" balancing test.

It is undisputed that medical records fall within an individual's privacy interests and are protected by the statutory confidentiality provisions under HIPAA and the Confidentiality Act. In addition, medical records fall within the penumbra of privacy rights protected by the Constitution. *See Doe*, 384 Md. at 183–84 (citing *Whalen v. Roe*, 429 U.S. 589, 599–600 (1997)) (Supreme Court recognizing that "cases . . . characterized as protecting 'privacy' have in fact involved at least two kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.") (footnotes omitted).

Because the patient's right to privacy in his or her medical records falls within the sphere of privacy rights entitled to constitutional protection, where a government agency is seeking disclosure of medical records that fall within the constitutional right to privacy, we have held that the "state agency[] must show a 'compelling state interest' before it will be allowed to infringe on petitioners' privacy rights regarding their treatment records." *Id.* at 183–84 (holding that Board of Social Work Examiners investigating accusation of failure of a licensed social worker to report sexual abuse of a minor must demonstrate a compelling state interest before the state agency could subpoena medical records); *see also Dr. K.*, 98 Md. App. at 111 (holding that the State Board of Physician Quality Assurance demonstrated a compelling state interest in the investigation of a psychiatrist who was alleged to be abusing alcohol and having a romantic relationship with a former patient,

which outweighed the patient's privacy right in her treatment records). Accordingly, we have held that "the balancing test framework described in *Westinghouse*, and applied in *Dr. K*, is the correct standard to use when balancing individual privacy interests in medical records *against competing state interest*s in those records." *Doe*, 384 Md. at 186 (emphasis added) (citations omitted).

In this case, the party seeking disclosure of Brother Holmes' mental health records is not a state actor—disclosure is sought in connection with private civil litigation. Accordingly, Brother Holmes' privacy interests are considered within the balancing framework established by the Confidentiality Act, instead of the constitutional balancing framework applicable to governmental requests for disclosure. *See, e.g.*, *Citizens for Health v. Leavitt*, 428 F.3d 167, 177 (3d Cir. 2005) (holding that a "violation of a citizen's right to medical privacy rises to the level of a *constitutional* claim only when that violation can properly be ascribed to the government. The Constitution protects against *state* interference with fundamental rights.") (emphasis in original).[26]

Although there is no state or governmental action that would trigger a constitutional balancing test under the *Westinghouse* framework, we determine that the patient's privacy rights are nonetheless afforded equivalent protections—those protections simply arise under the balancing framework outlined in the Confidentiality Act. Comparing the privacy protections discussed in Part III.B.5 of this opinion, and the *Westinghouse* factors outlined

---

[26] SLI acknowledges that this Court has never applied a "compelling governmental interest" test where the individual seeking the records was not a government agency, and acknowledges that in *Stein*, this Court did not apply a constitutional analysis where the party seeking disclosure of confidential records was a private litigant. 328 Md. 1.

41

in footnote 5, *supra*, we conclude that the patient's privacy interests are similarly and appropriately protected under either balancing analysis.[27]  As described in Part III.B.5, when a court considers a litigant's request for discovery of confidential mental health records, the court must undertake a relevancy analysis in connection with an *in camera* review and is only authorized to order disclosure of those portions of the records that are relevant.  Moreover, as part of the entry of a protective order, the court has discretion to establish protective parameters for disclosure.  Instead of balancing a "compelling state interest" in disclosure against the privacy interest, the balancing test involves a relevance inquiry and a court order permitting disclosure of only relevant records with additional protections established by a protective order on a case-by-case basis.

Although we hold that there is no constitutional analysis of privacy interests in the context of the discovery sought in this instance, as noted above, SLI has standing to raise any statutory objections to disclosure that Brother Holmes would have been permitted to raise.  *See* HG § 4-307(k)(6) (granting standing to raise any applicable "constitutional right *or other legal authority in opposition to disclosure.*") (Emphasis added).  Accordingly, although Brother Holmes' constitutional rights are not implicated by the discovery request, to the extent that his privacy rights are protected by statute, SLI would have standing to

---

[27] It is also worth noting that, where a constitutional right is implicated because of governmental action, the constitutional right to privacy is not absolute.  In many instances, the court determines that a compelling state interest overrides the individual's privacy interest.  *See Doe*, 384 Md. at 192–93; *Dr. K*, 98 Md. App. at 120–22.

ensure that the statutory provisions concerning disclosure, and the protections afforded by the Confidentiality Act, are followed.[28]

### E.    Application of the Balancing Framework to Mr. Jones' Request for Brother Holmes' Mental Health Records

In this case, Mr. Jones filed a motion seeking to compel disclosure of Brother Holmes' mental health records and requesting a court order compelling the disclosure, consistent with the process required by HG § 4-307(k)(1). Mr. Jones attached to his motion a memorandum containing his proffer of relevance. The proffer included a summary of the Massachusetts Action alleging negligent hiring and negligent supervision of Brother Holmes. Mr. Jones attached the handwritten and typewritten documents that had been produced by CSH in discovery that reflected that SLI had prepared two psychiatric evaluation reports. Mr. Jones explained the potential relevance of these psychiatric evaluations and mental health records to the Massachusetts Action, reasoning that "[w]hat was known about Holmes['] propensity to sexually abuse minors in his care and when that

---

[28] We disagree with Mr. Jones' contention that Brother Holmes has no privacy interest in his mental health records because he is deceased. We also disagree, based upon the record before us, that any privacy interest was waived. One cannot infer waiver based simply upon the fact that CSH had handwritten and typed notes referencing the psychiatric evaluations in its possession. Nor do we conclude that Brother Holmes had no privacy right in his mental health records given his guilty plea and convictions pertaining to sexual abuse of other individuals. Although Brother Holmes' convictions are "public facts," his mental health records are not. To be sure, the circuit court may consider these factors when balancing Brother Holmes' privacy interest against the plaintiffs' interest in disclosure. However, we are not persuaded that Brother Holmes has no privacy interest whatsoever in the mental health records arising from his death, convictions in other matters, or under principles of waiver. If we were to determine that Brother Holmes had no privacy interest in his mental health records, there would be no need to apply any balancing test under HG § 4-307 and the plaintiffs would be entitled to unfettered access to all of Brother Holmes' mental health records in SLI's possession.

43

was known is a central issue in the case." Mr. Jones also attached copies of newspaper articles reflecting that Brother Holmes pled guilty to 17 counts of sexual abuse of minors while they were residents at Nazareth—the same facility where Mr. Jones alleged that he was sexually abused. Mr. Jones asserted that the newspaper articles are evidence that Brother Holmes' sexual abuse of minors is public knowledge. Finally, Mr. Jones proffered that Brother Holmes died in April 2011.

Based upon the record before us, the proffer made by Mr. Jones in his memorandum appears to be sufficient to demonstrate a "need to inspect" or in other words, "a reasonable possibility that review of the records would result in discovery of usable evidence." *Stein*, 328 Md. at 27 (quotations and citation omitted). However, given the balancing of interests that the circuit court is required to make, and the statutory requirement that the court may only permit disclosure of information that is "relevant to the purpose for which disclosure is sought[,]" *see* HG § 4-307(c), we conclude that the trial court should examine the complaint filed in the Massachusetts Action as part of its relevancy inquiry.[29]

When undertaking its *in camera* review, the court's role is not to determine whether the records are admissible, but whether the records could lead the movant to the discovery

---

[29] SLI does not contend that the trial court is required to review all the pleadings filed in the Massachusetts Action. We agree. As part of its *in camera* review, the trial court could simply review the complaint and the mental health records sought by Mr. Jones to determine whether the records are relevant to his claims. Of course, this does not mean that the circuit court's review is limited to reviewing only the complaint. We simply note that under the facts of this case and the proffer by Mr. Jones' counsel, a review of the complaint should be sufficient to enable the circuit court to carry out its duties under HG § 4-307(c).

44

of usable evidence. *Zaal*, 326 Md. at 88. In accordance with HG § 4-307(c), the court should permit the disclosure of records or information that may be relevant to the claims asserted by the plaintiffs in the Massachusetts Action. This does not mean that the trial court must undertake a line-by-line analysis of the mental health records, nor should the court undertake its review with a preclusive intent. The court should review the claims asserted by the plaintiffs in the Massachusetts Action and determine whether the mental health records may lead to the discovery of usable evidence. Assuming that the trial court finds that the records are relevant, in furtherance of the balancing of interests between disclosure and protecting the privacy interests protected by the Confidentiality Act, we agree with the Court of Special Appeals that it is appropriate for the circuit court to order the portion of Brother Holmes' mental health records deemed relevant to the Massachusetts Action to be produced under seal to the Massachusetts Court for that court's determination as to what should be released to counsel.

## IV.

### Conclusion

For the reasons set forth above, we hold:

(1)    Where mental health records are requested by a private litigant in a civil case, the Confidentiality Act, the Maryland discovery rules, and our case law addressing discovery of confidential records establish the process to be undertaken by the trial court prior to disclosure of the records, which is outlined in Part III.B.5 of this opinion.

(2)    Under the plain language of the Confidentiality Act, HG § 4-307(k)(6), where a litigant is seeking discovery of mental health records, the health care provider or

45

custodian has standing to raise a patient's "constitutional right or other legal authority in opposition to disclosure."

(3)     The circuit court erred by failing to conduct the necessary statutory relevancy analysis required by HG 4-307(c).  Remand is appropriate for the court to review the complaint filed in the Massachusetts Action, and to conduct an *in camera* review of the mental health records.  Assuming the court determines that the records are relevant, it should enter an appropriate order transferring the relevant portions of the records under seal to the Massachusetts Court for further proceedings.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED; AND THE CASE IS REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**